**Elisa BAUZO, Plaintiff-Appellant,**

v.

**Otis R. BOWEN, Secretary of the United States Department of Health and Human Services, Defendant-Appellee.**

No. 85–1700.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 28, 1986.

Decided Oct. 17, 1986.

---

Before CUDAHY, COFFEY, and FLAUM, Circuit Judges.*

FLAUM, Circuit Judge.

This is an appeal from an order of the district court affirming the decision of the Secretary of Health and Human Services (Secretary) to deny plaintiff's application for social security disability benefits. The major issue we will address concerns the proper scope of judicial review in social security cases where the Appeals Council has reversed, pursuant to 20 C.F.R. § 404.-970(a), an Administrative Law Judge's (ALJ) grant of disability benefits. We hold that our review in such cases is limited to determining whether the Appeals Council's decision is supported by substantial evidence on the record as a whole. Because the Appeals Council's decision in this case was not supported by substantial evidence, we reverse and remand to the district court with instructions to remand to the Secretary for further agency proceedings.

## I. BACKGROUND

Appellant, Elisa Bauzo, was born in 1935 and completed her eighth grade education in Puerto Rico. She does not read or write English and has a limited understanding of oral English. On January 7, 1983, Bauzo filed concurrent applications for disability insurance benefits and supplemental security income alleging that she became unable to work on July 9, 1979 due to both a dislocated disc and a hernia. She complained of back, chest and leg pains, and nervousness. Following initial denial and denial upon reconsideration, an ALJ conducted a hearing during which Bauzo was represented by counsel.

At the hearing, Bauzo testified through her interpreter that she could walk only three blocks and climb the flight of stairs to her second-story apartment. She alleged that she was unable to sit for more than one-half hour, bend at the waist or lift

Agustin G. Garcia, Quinones & Garcia, Chicago, Ill., for plaintiff-appellant.

Mimi H. Leahy, Dept. of Health & Human Services, Anton R. Valukas, U.S. Atty., Chicago, Ill., for defendant-appellee.

* Pursuant to Circuit Rule 16(e), this opinion has been circulated among all judges of this court in regular active service. A majority did not favor a rehearing en banc on the question of overruling *Scott v. Heckler,* 768 F.2d 172 (7th Cir.1985).

objects because of back pain. Her typical day consists of caring for both herself and her eleven-year-old stepson, which includes cooking and doing the dishes. She is able to grocery shop once a week with assistance. Her hobbies are arranging flowers, working on macrame and watching television. She does not drive, do her own laundry or use public transportation without assistance.

Until 1974 Bauzo worked as an industrial sewing machine operator for five different companies in Puerto Rico. From 1974 to 1979, she was a punch press operator in a company that manufactures equipment for pin ball machines. Her back problems began in 1979 when she strained her back at work while pushing a cart containing a heavy load of materials. Because of her difficulty in walking, her vision problems, her inability to bend and sit, and her nervousness, Bauzo believes that she would be unable to return to her past work.

After listening to Bauzo's testimony and reviewing the medical exhibits, the ALJ issued a written decision granting benefits to Bauzo. The ALJ found that Bauzo was suffering from severe lumbar disc disease and angina and that she was unable to perform her past relevant work as a punch press operator and sewing machine operator due to her inability to either sit for more than one-half hour or lift more than ten pounds. The ALJ then applied Rule 201.17 of the "Grid", 20 C.F.R. Part 404, Subpart P, Appendix 2, Sedentary Tables, which directed a finding of disability. On its own motion, however, the Appeals Council reversed and held that the ALJ's decision was not supported by substantial evidence. 20 C.F.R. § 404.970(a)(3). Specifically, the Appeals Council determined that Bauzo's allegations of severe and disabling pain were not credible in view of the medical evidence, that Bauzo retained the functional capacity to perform work-related functions except for work involving constant standing or walking or lifting over twenty pounds, and that Bauzo's impairments did not prevent the performance of her past relevant work. The Appeals Council found, therefore, at the fourth step of the regulatory test for disability[1], that Bauzo was not disabled.

Bauzo then sought review of the Appeals Council's decision in the district court, which determined that the Appeals Council's decision was supported by substantial evidence. Accordingly, the district court granted summary judgment for the Secretary.

## II. SCOPE OF REVIEW

■ Last year, in *Scott v. Heckler,* 768 F.2d 172, 178 (7th Cir.1985), we held that 20 C.F.R. § 404.970(a) limits the authority of the Appeals Council to initiate own motion review of an ALJ's decision. Section 404.-970(a) provides:

(a) The Appeals Council will review a case if—

(1) There appears to be an abuse of discretion by the administrative law judge;

(2) There is an error of law;

(3) The action, findings or conclusions of the administrative law judge are not supported by substantial evidence; or

(4) There is a broad policy or procedural issue that may affect the general public interest. 20 C.F.R. § 404.970(a).

In *Scott,* we interpreted § 404.970(a) to limit the Appeals Council's discretion in rejecting an ALJ's decision. *Scott,* 768 F.2d at 178. According to *Scott,* a reviewing court has "an obligation to determine whether

---

1. Social Security regulations prescribe a sequential inquiry to be followed in determining whether a claimant is disabled. The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment 'severe?' (3) Does the impairment meet or exceed one of the list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops inquiry and leads to a determination that the claimant is not disabled.

*Zalewski v. Heckler,* 760 F.2d 160, 162 n. 2 (7th Cir.1985), citing 20 C.F.R. § 404.1520.

the own motion review conducted by the Appeals Council was in fact justified under the standard by which the Council justified it in theory." *Id.* Under *Scott,* a reviewing court first examines the ALJ's decision to determine whether the Council properly exercised its authority to review. If the Council failed to properly exercise its authority to review, then the ALJ's decision, not the Appeals Council's, constitutes the Secretary's final decision for purposes of judicial review under 42 U.S.C. § 405(g). *Id.* at 179. We since have reconsidered our decision in *Scott* and now hold that § 404.-970(a) does not limit the Appeals Council's discretion to initiate review of an ALJ's decision. We find convincing the rationale of the Circuits which have held that judicial review should be limited to determining whether the Appeals Council's decision is supported by substantial evidence on the record as a whole. *See Lopez-Cardona v. Secretary of Health and Human Services,* 747 F.2d 1081 (1st Cir.1984) (per curiam); *Parris v. Heckler,* 733 F.2d 324 (4th Cir. 1984); *Kellough v. Heckler,* 785 F.2d 1147 (4th Cir.1986); *Deters v. Secretary of Health, Education and Welfare,* 789 F.2d 1181 (5th Cir.1986); *Mullen v. Bowen,* 800 F.2d 535 (6th Cir.1986) (en banc); *Baker v. Heckler,* 730 F.2d 1147 (8th Cir.1984); *Taylor v. Heckler,* 765 F.2d 872 (9th Cir.1985); *Razey v. Heckler,* 785 F.2d 1426 (9th Cir. 1986); *Howard v. Heckler,* 782 F.2d 1484 (9th Cir.1986); *Parker v. Bowen,* 788 F.2d 1512 (11th Cir.1986) (en banc). Thus we overrule *Scott* and focus our review upon the Appeals Council's decision rather than the ALJ's. Even if the ALJ's decision is supported by substantial evidence, the Appeals Council will not violate its own regulations by initiating review on its own motion.

█ Today's holding is consistent with the statutory scheme for the administration of social security benefits. 42 U.S.C. § 405(b) authorizes the Secretary "on his own motion, to hold such hearings and to conduct such investigations and other proceedings as he may deem necessary or proper for the administration of [federal old-age, survivors, and disability insurance

benefits programs]." Under 42 U.S.C. § 405(g) federal courts may review the Secretary's "final decision" and the findings of the Secretary are conclusive if supported by substantial evidence. The Secretary has chosen the Appeals Council, not the ALJ, to make these final decisions. *See* 20 C.F.R. §§ 404.900, 404.981, 416.1400, 416.1481. Since federal courts may review only the Secretary's final decisions and because the Secretary has delegated its authority to make final decisions to the Appeals Council, reviewing courts must therefore defer to the Appeals Council's decision. *Parris,* 733 F.2d at 326; *Kellough,* 785 F.2d at 1151; *Deters,* 789 F.2d at 1185; *Parker,* 788 F.2d at 1516–17.

█ Limitation of judicial review to the Appeals Council's decision more properly reflects the great deference which should be given to an agency's interpretation of its own regulations. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). It is also compatible with our recent decision in *DeLong v. Heckler,* 771 F.2d 266 (7th Cir. 1985), in which we interpreted a companion regulation, 20 C.F.R. § 404.969. Section 404.969 provides:

*Appeals Council initiates review.*

Anytime within 60 days after the date of a hearing decision or dismissal, the Appeals Council itself may decide to review the action that was taken. If the Appeals Council does review the hearing decision or dismissal, notice of the action will be mailed to all parties at their last known address. 20 C.F.R. § 404.969.

In *DeLong,* we read § 404.969 as affording the Appeals Council the authority to review an ALJ's grant of benefits on its own motion. *Id.* at 268. We agree with the Fifth Circuit that § 404.969 authorizes the Appeals Council to review any ALJ decision under its own motion review authority. *Deters,* 789 F.2d at 1184, citing *DeLong,* 771 F.2d at 267–68. Section 404.970(a) merely indicates the kinds of decisions the Appeals Council will review. Read together §§ 404.969 and 404.970(a) indicate that the limited purpose of § 404.970(a) is to

advise claimants of those kinds of cases in which the Appeals Council will exercise its power under § 404.969. *Deters,* 789 F.2d at 1184. *See also Baker,* 730 F.2d at 1149; *Parker,* 788 F.2d at 1518–19. As the Eleventh Circuit observed in *Parker,* 788 F.2d at 1519, any other interpretation would both interfere with the Secretary's ability to develop a consistent approach to monitoring the output of his department and undermine the purpose behind the Bellmon Amendment [2]—to promote uniformity and accuracy among the ALJ's decisions. *See also DeLong,* 771 F.2d at 268 (primary purpose of 20 C.F.R. § 404.969 is to achieve consistency in the administration of social security disability benefits program). In addition, as the Eighth Circuit stated in *Baker,* any other interpretation would create practical difficulties because the decision to review the ALJ's decision necessarily must be addressed at the preliminary stages of the Appeals Council review process.

> The Council may believe, for example, that the case fits one of the four categories listed in the regulation, but it may turn out, after full examination, that this initial impression was mistaken. We do not believe that the Council is then required to abandon its own review and to allow the ALJ's decision to stand, even when it has a definite and firm conviction that the ALJ was mistaken. The question of power to review must, as a practical matter, be addressed and decided at a preliminary stage, not after the review is completed, at a time when a negative answer to the question would render the whole process nugatory. *Baker,* 730 F.2d at 1150.

We find this reasoning persuasive.

Our construction is also supported by *Universal Camera Co. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed.456 (1951). The Court there explained that the substantial evidence standard does not change when the NLRB and its examiner disagree; rather, the finding of the examiner is simply one factor to be considered in determining whether the substantial evidence standard has been satisfied. *Id.* at 406, 71 S.Ct. at 468. The "evidence supporting [the Board's] conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn [different] conclusions". *Id. Universal Camera* has been applied by numerous courts reviewing the decisions of other agencies. *Parker,* 788 F.2d at 1517–18 (citing cases).

We, therefore, now consider whether the Secretary's decision, as reflected in the Appeals Council's determination, is supported by substantial evidence. In making this determination, we note that although the findings of the ALJ are not binding on the Council, they should not be ignored. The conflicting findings are part of the record as a whole, and will be considered in determining whether the Council's decision is supported by substantial evidence. *Universal Camera,* 340 U.S. at 496, 71 S.Ct. at 468. Furthermore, when the Appeals Council rejects an ALJ's credibility findings, it should do so expressly and state its reasons for doing so. *See Beavers v. Secretary of Health and Human Welfare,* 577 F.2d 383, 387–88 (6th Cir.1978); *Lopez-Cardona,* 747 F.2d at 1084; *Parris,* 733 F.2d at 327; *Howard,* 782 F.2d at 1487–88; *Parker,* 788 F.2d at 1520–21. This will enable a reviewing court to determine whether the Council's reasons for rejecting the ALJ's credibility findings are based on substantial evidence.

**2.** As part of the 1980 amendments to the Social Security Act, Congress enacted the Bellmon Amendment which requires the Secretary of Health and Human Services to institute a program of ongoing own-motion review of ALJ disability claim decisions. Social Security Disability Amendments of 1980, Pub.L. No. 96–265, § 304(g), 94 Stat. 441, 456. "The Bellmon Amendment grew out of congressional concerns about the increasing number of disability decisions being appealed to the ALJs, the high number of allowance decisions issued by ALJs, the accuracy of those decisions, and the policy that only ALJ decisions denying claims were subject to review." *W.C. v. Heckler,* 629 F.Supp. 791, 793 (W.D.Wash.1985), citing H.R.Rep. No. 944, 96th Cong., 2d Sess. 57, *reprinted in* 1980 U.S. Code Cong. & Ad.News 1392, 1405; S.Rep. No. 408, 96th Cong., 2d Sess. 53, *reprinted in* 1980 U.S.Code Cong. & Ad.News 1277, 1331.

## III. THE APPEALS COUNCIL'S DECISION

Under the Social Security Act, a plaintiff's eligibility for benefits depends upon whether the plaintiff is "under a disability." 42 U.S.C. § 423(a)(1)(D). The term disability means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* at § 423(d)(1)(A). An individual is under a disability "only if his physical or mental ... impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." *Id.* at § 423(d)(2)(A). These impairments must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *Id.* at § 423(d)(3). Once the claimant shows inability to perform past work, the burden shifts to the Secretary to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250, 1252–53 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir.1984).

■ In reviewing the Appeals Council's decision, we must keep in mind how much evidence is needed for substantial evidence. Substantial evidence has been described as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). This court's duty is not to reweigh the evidence, decide the facts anew, or substitute our judgment for that of the Secretary. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir.1986) (per curiam). Nevertheless, we should not act as an uncritical rubber stamp for the Secre-

tary's decision. *Id.* A reviewing court must look at the entire record of the proceedings to determine whether there is substantial evidence supporting the Appeals Council's decision. The court should consider the following to aid its evaluation: the clinical findings of treating and examining physicians, the diagnoses of these physicians, the subjective evidence of pain and disability as testified to by the plaintiff and as observed by others, and the plaintiff's educational background, work history, and present age. *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir.1982). Both the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be examined, since review of the substantiality of evidence takes into account whatever in the record fairly detracts from its weight. *Stephens v. Heckler*, 766 F.2d 284, 288 (7th Cir.1985), citing *Universal Camera*, 340 U.S. at 488, 71 S.Ct. at 464.

This court has consistently required an ALJ's decision to be based upon a "fair and impartial presentation of all the medical evidence that is credible, supported by clinical findings, and relevant to the particular issue." *Zalewski v. Heckler*, 760 F.2d 160, 163 (7th Cir.1985); *See also Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir.1985); *Taylor v. Schweiker*, 739 F.2d 1240, 1243 (7th Cir.1984). In addition, the reasons for the ALJ's conclusions must be stated in a manner sufficient to permit an informed review. *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir.1984). Similar requirements necessarily apply in reviewing the Appeals Council's decision.

■ Our review of the record convinces us that substantial evidence does not support the Appeals Council's decision denying benefits. Although Bauzo's chest pain appears less serious, the evidence concerning Bauzo's back and leg problems does not support the Appeals Council's conclusion that she was capable of performing her past relevant work. The record discloses that Bauzo was hospitalized for one month

in February 1982 for lower back pain.[3] During this hospitalization, Dr. Javier, Bauzo's treating physician, examined her and found both her heart and legs to be normal. On February 17, Bauzo underwent a lumbar laminectomy[4] on L–4, S–1 and bilateral removal of L–5, S–1 herniated nucleus pulposus.[5] An anomalous S–1 nerve root was also surgically treated. Following surgery, Bauzo complained of chest pains and several electrocardiographs (EKG's) were both normal and abnormal. Bauzo was ultimately released on March 2. The discharge summary form completed by Dr. Javier indicated that she was limited to "restricted" physical activities. On this same form Dr. Javier passed over the line to be checked for "able to work."

On July 8, 1982, Bauzo was again hospitalized complaining of abdominal and lower back pain radiating into her legs. Examinations performed by both Dr. Javier and a referral physician found tenderness in her spinal area, but were conflicting as to the results of the straight leg raising tests. No apparent neurological defects were found, and her heart and lungs were diagnosed as normal. The final diagnosis included low back syndrome. Upon release Bauzo was limited to "restricted" activities, but there was no specific indication as to what she was able to do.

At the Social Security Administration's request, Dr. Bacalla, a consulting physician, examined Bauzo in March 1983. Dr. Bacalla believed that Bauzo's description of chest pain was not typical of angina pectoris, for her blood pressure and chest x-rays were normal, and no chest tenderness was noted. An exercise stress test performed by Bauzo was negative but had to be discontinued because of leg cramps.

Dr. Bacalla's impression of Bauzo's allegations of back pain was "status post lumbar laminectomy with possible osteoarthritic changes and possible radiculopathy". Dr. Bacalla noted that Bauzo walked normally and that films of her spine failed to demonstrate evidence of a fracture. She also found a slight scoliosis of the spine and a scar at the lumbosacral region, which she associated with paraspinal muscle spasms. Bauzo's straight leg raising test was positive at seventy-five degrees bilaterally. Dr. Bacalla found a moderate restriction of movement of the lumbosacral spine and a decreased sensation in the legs. She noted a slight decrease in muscle strength, but no significant reflex abnormality or atrophy of muscles. The x-rays of the lumbosacral spine revealed disc space narrowing at L–5, S–1 which Dr. Bacalla stated suggested disc pathology. Dr. Bacalla also noted muscular spasms and tenderness and post-surgical changes with the laminectomy. She found that Bauzo could flex her spine to a seventy-five degree angle, extend it to a fifteen degree angle and laterally flex to a twenty degree angle bilaterally. With respect to Bauzo's claim of pain in her legs, Dr. Bacalla stated that Bauzo had intermittent claudication[6] and leg cramps while resting. Upon examination her feet were cold, but no ulcerations, muscle atrophy, edema or significant trophic nail changes were present. Periph-

3. Hospital reports indicated that Bauzo was hospitalized in 1979, 1980, and twice in 1981 for lower back pain. An electromyographic examination and myelogram taken during an earlier hospitalization were apparently normal, but according to Bauzo, surgical exploration was recommended. Until her hospitalization in February 1982, Bauzo underwent physical therapy for her back. A different physician tended to her care during this time. None of the medical reports prior to 1982 are part of the record.

4. A laminectomy is "a surgical operation in which the posterior arch of a vertebra is removed." J.E. Schmidt, *Attorneys' Dictionary of Medicine,* L–15 (1982).

5. A herniated nucleus pulposus is the "protrusion of the tissue within an intervertebral disk through the ruptured rim of the disk, resulting in a herniated mass which may press on the spinal cord." Schmidt, *supra* note 5, at H–59.

6. Intermittent claudication is "a condition marked by cramplike pains in the legs, especially in the calf muscles, brought on by walking and relieved by rest. It is due to a deficiency in the blood supply to the extremities on the basis of arteriosclerosis (hardening of the arteries) or abnormal spasm of the blood vessels." Schmidt, *supra* note 5, at I–67.

eral pulses were diminished, but no significant reflex abnormalities or other neuorological defects were noted. Dr. Bacalla did not submit a residual functional capabilities evaluation form or indicate how Bauzo's impairments would interfere with the performance of basic work activities.

In two letters dated November 1983 and February 1984, Dr. Javier, Bauzo's treating physician, mentioned that he had seen her several times since her surgery, each time she complained of lower back pain. He stated that a review of all his records indicated that Bauzo had spinal tenderness, leg flexion of 75% and leg extension of 20%. He also stated that she cannot lift over ten pounds, walk over two blocks, or sit or stand for long periods of time. He wrote that medication only temporarily relieves Bauzo's pain and that her legs were numb. He reported her straight leg sign as positive on the left at 45% and negative on the right. Dr. Javier concluded that, in view of Bauzo's present condition, her persistent pain and her inability to walk long distances or sit or stand for long periods, Bauzo was unable to work.

Although this is a close case, after carefully reviewing the record, we conclude that there is not substantial evidence to support the Appeals Council's decision that Bauzo could return to her past relevant work. The critical question in this case is whether Bauzo's testimony as to the disabling effects of her pain is credible. The Appeals Council found that Bauzo's complaints were not credible based on the consultative examination of Dr. Bacalla. The Council, however, ignored much of Dr. Bacalla's positive findings except for the narrowing of the disc space and post-surgical changes. In its conclusion, the Appeals Council stated that Dr. Bacalla's findings were negative and that Bauzo was capable of light work. Furthermore, the Appeals Council stated that "the objective medical evidence establishes the absence of any finding (e.g. muscles spasms ...) that are typically associated with a functionally limiting pain," though Dr. Bacalla's report twice indicated muscle spasms as well as decreased muscle strength, tenderness, positive straight leg raising, limitation of the lumbosacral range of motion, and some decrease in sensation in the legs. The Appeals Council failed to articulate the basis for adopting the favorable part of Dr. Bacalla's assessment of Bauzo's condition and rejecting the unfavorable part. Such articulation is required here in order to find substantial evidence to support the Council's determination. *See Switzer v. Heckler*, 742 F.2d 382, 385–86 (7th Cir.1984).

The Appeals Council found that Bauzo retained the capacity to perform at least light work [7] and therefore was not prevented from returning to either her past work as a punch press operator or as a sewing machine operator. The Council was required to address two considerations in determining whether Bauzo could return to her past relevant work: (1) the demands and requirements of Bauzo's past relevant work and (2) Bauzo's present physical and mental capabilities. *See* 20 C.F.R. § 404.-1520(e); *Strittmatter v. Schweiker*, 729 F.2d 507, 509 (7th Cir.1984). The only evidence regarding the physical requirements of Bauzo's past relevant work was offered by Bauzo herself. Bauzo reported that her former job as a sewing machine operator required sitting eight hours a day, with constant reaching and occasional bending. She also stated that her work as a punch press operator required reaching and bending and eight hours of sitting or eight

---

7. "Light work" is defined by the regulations as follows: Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
20 C.F.R. § 416.967(b).

hours of standing depending on her job assignment. Both jobs were factory positions with rigid time and speed requirements. The Appeals Council did not question Bauzo's statements that her past relevant work required eight hours of sitting or standing.

The only physician to address the issue of whether Bauzo could return to her past relevant work or to indicate Bauzo's capabilities was Dr. Javier, who believed she would be unable to return to her past work because she was unable to lift over ten pounds or to sit, stand or walk for prolonged periods. The only other evidence of Bauzo's capabilities is her own testimony. No other physician provided any medical findings concerning the impact of Bauzo's impairments on her residual capabilities. Thus, this is not a case in which the consulting physician's findings conflict with those of the treating physician; Dr. Bacalla made no finding as to the level of disability attributable to Bauzo's impairments. *Compare Stephens*, 766 F.2d at 288–89. Nevertheless, her report is not inconsistent with either Dr. Javier's findings or Bauzo's claim of back and leg pains.

The Appeals Council found that while Bauzo could lift and carry up to twenty pounds, she should avoid frequent bending and constant standing or walking. In reaching this conclusion, the Appeals Council completely disregarded Bauzo's testimony that her past relevant work as a punch press operator sometimes required eight hours of standing. Moreover, it failed to mention at all the finding that Bauzo was unable to sit for long periods. There is nothing in the record to indicate that Bauzo can sit for prolonged periods. Dr. Bacalla's report established only the bare medical facts of Bauzo's condition. "Neither the Appeals Council nor this court is qualified to make [a] medical judgment about residual functional capacity based solely on bare medical findings as to [a] claimant's ... condition." *Lugo v. Secretary of Health and Human Services*, 794 F.2d 14, 15 (1st Cir.1986) (per curiam); *See also Berrios v. Secretary of Health and Human Services*, 796 F.2d 574, 576 (1st Cir.

1986) (per curiam). Given Dr. Javier's uncontradicted assessment of Bauzo's capabilities and Bauzo's own testimony, the Council's finding that Bauzo could return to work that would require her to sit or stand for the entire day is unfounded. In the absence of substantial evidence to support the Secretary's finding that Bauzo had the capacity to perform her past relevant work, we remand to the Secretary so that he may receive and consider additional evidence regarding Bauzo's capability for doing her former work. *See Garfield*, 732 F.2d at 610 n. 8 (remand appropriate where findings of Secretary are not supported by substantial evidence but do not provide sufficient evidence to support reversal and a finding that the claimant is disabled).

■ A remand is also appropriate in this case because of new evidence which Bauzo has attached to her brief in this court. 42 U.S.C. § 405(g) expressly permits a court to remand a case to the Secretary where there is new and material evidence submitted and there is good cause for failing to incorporate the evidence in a prior proceeding. *See Newhouse v. Heckler*, 753 F.2d 283, 286–87 (3d Cir.1985); *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir.1985); *Booz v. Secretary of Health and Human Services*, 734 F.2d 1378, 1380–81 (9th Cir. 1984); *Caulder v. Bowen*, 791 F.2d 872, 875–79 (11th Cir.1986). Bauzo's new evidence consists of a report of an operation performed in February 1985 in which a recurrent herniated nucleus pulposus and a S–1 nerve root were treated. Since the evidence Bauzo seeks to submit was not available until after the case had reached this court, there is not question that the evidence is new and that there is good cause for failure to present the evidence earlier. In addition, evidence of the 1985 operation is material because it tends to show that Bauzo's earlier operation did not correct her back problem sufficiently to permit her to return to her former jobs. It is also material because it indicates that her back condition is continuing to deteriorate and provides further objective clinical evidence for her claim of disabling pain.

The judgment of the district court is REVERSED and the case REMANDED to the district court with instructions to remand to the Secretary for consideration of the new medical evidence and for further proceedings consistent with this opinion.