Kuzuko SCOTT, Plaintiff,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Defendant.

No. S 84–81.

United States District Court,
N.D. Indiana,
South Bend Division.

Feb. 11, 1987.

Robert C. Rosenfeld, South Bend, Inc., for plaintiff.

Clifford D. Johnson, Asst. U.S. Atty., South Bend, Ind., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I.

The plaintiff brings her case pursuant to § 205(g) of the Social Security Act, 42

U.S.C. § 405(g), for judicial review of the Secretary's final decision denying her application for disability benefits. Both parties having filed motions for Summary Judgment, the matter is ripe for ruling.

### A.

The basic issue presented to the court is whether or not the final decision of the Secretary, in this case the decision of the Appeals Council, is supported by substantial evidence. Since the Council appears to have decided the case at step four of its procedural process, having acknowledged the severity of Mrs. Scott's impairments, the more particular issue is whether substantial evidence supports the Appeals Council's finding that the claimant's impairments do not prevent her from performing her past relevant work. For the reasons set forth, the court finds the required evidence to be lacking.

The administration denied the plaintiff's disability initially on November 23, 1981 and on reconsideration March 19, 1982. Upon a hearing on April 8, 1983, the Administrative Law Judge (ALJ) found Mrs. Scott to be disabled. Essentially he found that the claimant was unable to perform her past work as a kitchen helper due to squeezing chest pain of undetermined etiology but probably of cardiac origin, and back pain with degenerative arthritis. Having found no combination of impairments in the listed impairments, the ALJ found a capacity for work activities which would not require bending, stooping, walking fast, or lifting or carrying over 10 pounds, which he classified as less than a full range of light work. He further found nonexertional limitations in the form of the need to avoid manual contact with various substances due to a skin condition. The ALJ recognized the claimant as closely approaching advanced age, and as being illiterate with a limited education. Having reviewed Rules 202.16 and 201.17 Section 404.1569 Regulation 4, Appendix 2, Subpart P, the ALJ found no significant number of jobs in the national economy which the claimant could perform.

On its own initiative, the Appeals Council reversed this decision on November 21, 1983, finding as follows:

1. The claimant met the special earnings requirements of the Act on February 9, 1981, the date that the claimant stated she became unable to work, and continues to meet them through December 31, 1985.

2. The claimant has the following impairments: chest pain of unknown etiology, a mild L4–5, S1 radiculopathy of the lumbar spine, and hand eczema.

3. The Appeals Council does not find the claimant's subjective complaints, including pain, to be credible.

4. The claimant has the residual functional capacity to perform work-related functions except for work involving a full range of medium and heavy physical exertion.

5. The claimant's past relevant work as cafeteria counter attendant did not require a full range of medium and heavy physical exertion.

6. The claimant's impairments do not prevent the performance of this past relevant work.

7. The claimant was not under a "disability," as defined in the Social Security Act, at any time through May 6, 1983, the date of the decision of the administrative law judge.

### B.

The Court of Appeals for the Seventh Circuit recently joined the majority of other Circuit Courts in interpreting the Social Security Regulations to authorize the Appeals Council to review an ALJ's decision on its own initiative for any reason in *Bauzo v. Bowen,* 803 F.2d 917 (7th Cir.1986). See also *Welch v. Sec.,* 808 F.2d 264 (3d Cir.1986); *Mullen v. Bowen,* 800 F.2d 535 (6th Cir.1986); *Lopez-Cardona v. Sec.,* 747 F.2d 1081 (1st Cir.1984) (per curiam); *Kellough v. Heckler,* 785 F.2d 1147 (4th Cir. 1986); *Deters v. Sec.,* 789 F.2d 1181 (5th Cir.1986); *Baker v. Heckler,* 730 F.2d 1147 (8th Cir.1984); *Razey v. Heckler,* 785 F.2d

1426 (9th Cir.1986); *Fierro v. Bowen,* 798 F.2d 1351 (10th Cir.1986); *Parker v. Bowen,* 788 F.2d 1512 (11th Cir.1986) (en banc). The court's attention, therefore, turns to whether the Council's findings were based on substantial evidence from a review of the record as a whole. Although the court will not reweigh evidence, decide facts anew, or substitute judgment for that of the Secretary, *Bauzo,* 803 F.2d at 923, *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir. 1986) (per curiam), neither will the court act as an uncritical rubber stamp for the Secretary's decision, *Bauzo,* 803 F.2d at 923, *Delgado,* 782 F.2d at 82. "Although the findings of the ALJ are not binding on the Council, they should not be ignored," *Bauzo,* 803 F.2d at 822. The substantial evidence required to support the Council's decision must be such that a reasonable mind might accept it as adequate to support a conclusion. If the record contains such support, the court must affirm absent an error of law, *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), *Fox v. Heckler,* 776 F.2d 738 (7th Cir.1985). The evidence required is more than a mere scintilla, *Bauzo,* 803 F.2d at 923, *Delgado,* 782 F.2d at 82.

In formulating its findings the Appeals Council painstakingly reviewed the medical evidence presented by various doctors and examiners. In summary, the record showed that Mrs. Scott was hospitalized from March 4 to March 16, 1979, with a final diagnosis of unstable angina, coronary ischemia, acute inferior wall, anxiety, and cervical spondylosis. She was readmitted November 23 to 30, 1979, with a diagnosis of lumbosacral spine strain, seborrheic dermatitis of the face, atopic hand eczema, angina pectoris, and hypertension. Upon readmission February 9 to February 19, 1981, her final diagnosis was low back strain, degenerative arthritis, and anemia. A subsequent hospitalization from April 6, 1981 to April 21, 1981 resulted in a final diagnosis of unstable angina, degenerative arthritis, gastritis, and history of pleurisy. A June 5–9, 1981 hospitalization found chest discomfort of unknown etiology. The plaintiff was again hospitalized from January 4 to January 20, 1982, which pro-

duced a final diagnosis of degenerative arthritis, L4–5, S1 radiculopathy, and probable polyneuritis. Throughout the above hospitalizations, the plaintiff complained of chest and back pain, shortness of breath, and skin conditions which she believed in combination would prevent her from returning to her work as cafeteria help. On the basis of the record as a whole the court agrees. Substantial evidence does not support the Appeals Council findings that the plaintiff remains capable of returning to prior relevant work.

■ To aid in its evaluation of whether the Council's decision is based on substantial evidence the court will consider the clinical findings of treating and examining physicians, the diagnoses of these physicians, the subjective evidence of pain and disability as testified to by the plaintiff and as observed by others, and the plaintiff's educational background, work history, and present age, *Whitney v. Schweiker,* 695 F.2d 784, 786 (7th Cir.1982), *Bauzo v. Bowen,* 803 F.2d 917, 923 (7th Cir.1986).

### C.

■ The record indicates that Mrs. Scott was born in Japan on June 15, 1932, where she achieved an eighth grade education. Her prior employment consisted of cafeteria work for Grissom Air Force Base, starting in the early seventies and ending with the date of her alleged disability on February 9, 1981. She indicated at her hearing that she neither reads nor writes English, and although she did not use an interpreter, the greater portion of the transcript is a three-way conversation involving the ALJ, Mrs. Scott's husband, and her attorney. From the transcript and other indications in the record, it is apparent that she also has some difficulty with understanding and speaking English. However, since the Appeal's Council determined that the plaintiff could return to her former work, it did not consider factors of age, educational limitation and illiteracy. The Council discounted the plaintiff's subjective complaints, including pain, as not credible.

**1480**

On her application for disability, Mrs. Scott indicated unstable angina pectoris and degenerative arthritis, with her spine being most affected. The following testimony took place at her hearing:

Q: ... What happened that made you stop working?

A: Stop to work?

Q: Why did you stop working?

A: Hurt—Hurt my back, my chest. Dr. Yun saw me. And I go see doctor. Doctor say you can't work. (Tr. 44–45).

Her husband stated that he made up the application for her originally, and filled it out based on what Dr. Yun had told him. With respect to the plaintiff's pain, Mr. Scott indicated that the plaintiff wears "Nitro" to alleviate "terrific chest pains and arm pains", and that erratic E.K.G.'s had prompted her physician to place her in intensive care on several occasions.

With respect to the nature of the plaintiff's former work, the Appeals Council stated that Exhibit 29 refers to Mrs. Scott as a counter attendant (Tr. 16). In fact, the record indicates that from 1972 to 1974 she was called a counter attendant, whereas from 1974 to 1981, her job title was food service worker. The decision of the Appeals Council further stated that the claimant's own description of her specific duties included counter attendant and from this formulated a belief that her past relevant work would be more accurately described as a counter attendant. By contrast the ALJ concluded that despite the claimant's terminology of "food handler", her job fit better the description of general kitchen helper, based on a review of her activities.

In her disability report the plaintiff indicated that her job included making salads, cashiering, working the clipper room, bussing tables, mopping and sweeping, working short order grill, and lifting items of about 45 pounds. She further indicated that she was prevented from working by fatigue, pain in her back and chest, shortness of breath, and the inability to lift (Tr. 70). In her vocational report, dated July 20, 1981, she described her work activities in more detail, indicating that her job required lifting buckets of water 2–10 times a day, weighing 25 pounds, lifting a milk container once a day weighing 60 pounds, moving dishes to a serving line of various weights numerous times a day, frequently lifting meats and grill items of 5 to 20 pounds and moving trays for dishes numerous times a day with weights varying from 25 to 40 pounds. She estimated that her work required four hours each of walking and standing, no sitting, and frequent bending and reaching. A notation on the remarks sheet of the plaintiff's disability report indicated that she is four feet, eleven inches tall and weights 150 pounds.

In a report dated July 22, 1981, the plaintiff's treating physician, Dr. Yun, stated a diagnosis of low back pain, epigastric pain, pleuritic chest pain, acute anxiety, numbness of extremities, and degenerative arthritis of the spine. He reported that the claimant had dyspnea and fatigue with a negative chest X-ray and no findings of vascular congestion. Dr. Yun stated that the claimant did have chest pain of cardiac origin described as squeezing with radiation to the left shoulder. The pain lasted ten to thirty minutes and was relieved with rest and medication. He described the claimant's maximum lifting as 10 pounds with frequent lifting of 5 pounds. He opined that the claimant could sit for an extended period of two hours and could stand or walk for one hour in an eight hour day; and, the claimant could not do any bending, stooping, pushing, pulling, or climbing (Exhibit 15). In a telephone contact on August 20, 1981, Dr. Yun reported that an X-ray taken in March 1981 revealed degenerative arthritis of the lumbosacral spine with hypertrophic changes. He stated that the claimant's range of motion was restricted about 50 percent by pain, but there were no neurological deficits (Exhibit 16). On August 27, 1981, Dr. Yun reported that the claimant was very nervous but her behavior, ability to think, concentration, attention span, and memory were all within normal limits (Exhibit 17). The claimant's shortness of breath was due to chronic obstructive lung disease (Exhibit 18).

In reaching its conclusions, the Council appears to have rejected the physical limitations described by Dr. Yun. Subsequent examinations by consultants indicated limitations in terms of repeated bending, walking fast, stooping, carrying and lifting heavy objects, excessive pushing and pulling, and climbing stairs, acknowledging that Mrs. Scott might be able to sit and stand, manipulate arms and fingers, walk slowly and use public transportation. The first consultant found Mrs. Scott to be capable of sedentary light work on a sustained basis (Tr. 127). He found that her orthopedic condition might not improve considerably, and might deteriorate to a point of requiring surgery. With respect to her chest pain, Dr. Rhee opined, "... with judicious treatment, her symptomatology may improve, and she may perform light activity on a sustained basis." (Tr. 127).

On January 10, 1983, the claimant underwent a second consultative examination by Dr. William Holland, an internist. Her blood pressure was 144/100 and the pulse was 84. Funduscopic examination was thought to be normal. Her lungs were clear to auscultation and percussion with slight addipose tissue in the upper thoracic spine area and there was some pain in the lower thoracic spine. Heart tones were normal without murmurs. She had dermatitis of both hands including the right palm and first finger and at least two fingers of the left hand were covered with bandages to hold the medicine against the skin. An EKG showed biphasic T waves and T wave inversion in the inferior and anterior leads which were nonspecific and which could indicate ischemia and electrolyte problems. Chest X-rays showed a 13 percent enlargement of the heart. X-rays showed a straight thoracic spine with prominent endplates possibly indicating some osteoporosis. Dr. Holland stated that the claimant had several problems including chest pain with an abnormal electrocardiogram and cardiomegaly. He said an exercise test should be done to determine whether angina exists. In addition, she had difficulty with her back requiring previous hospitalizations with traction and physiotheraphy and currently wears a corset. Her blood pressure was slightly elevated. Dr. Holland stated that possibly for those reasons, the claimant was totally disabled (Exhibit 23).

An undated report by Dr. Yun indicated difficulty walking and standing for long periods and diagnosed the plaintiff as having severe low back pain and bilateral carpal tunnel syndromes, elevated ESR, pleurisy, chronic pulmonary lung disease, degenerative arthritis, rhinitis, possible hay fever, probable gastritis, and peptic ulcer. He indicated that her limited movement and severe back pain, together with severe chest pain, which had not improved in spite of treatment, prevented her from stooping, bending, lifting or even sitting. Dr. Yun considered the plaintiff totally and permanently disabled for any significant employment.

On the basis of the above, but without benefit of Dr. Holland's 1983 examination, reviewing examiners in 1981 and 1982 concluded that the plaintiff could perform a light level of work (Tr. 91–95).

The court finds the record lacking in substantial support for the Council's finding that the claimant has the residual functional capacity to perform work-related functions except for work involving a full range of medium and heavy physical exertion. The court further finds substantial evidence lacking for the finding that the plaintiff's impairments do not prevent the performance of past relevant work. Moreover, the Council's procedures have become suspect as a matter of law.

### D.

In *Johnson v. Heckler*, 769 F.2d 1202 (7th Cir.1985), the Seventh Circuit stated its position with respect to a widespread controversy about certain of the Secretary's procedures in disability determinations. For a review of the background and status of this controversy, see *Martin v. Bowen*, 651 F.Supp. 1334 (N.D.Ind.1987). Although Mrs. Scott's case was technically decided at the fourth step of the determination, *Johnson* held that the plaintiff's im-

pairments were to be combined at step two of the sequential evaluation process, invalidating SSR 82–55 as inconsistent with the Act, *Johnson,* 769 F.2d at 1215. The Council made no specific finding with respect to severity, and in its narrative analysis, appeared to consider each impairment separately, dismissing each as nonsevere in terms of basic work related functions. The decision is unclear with respect to consideration of the combined effects of the plaintiff's impairments on her ability to return to her former work. Instead, the Council avoided addressing the effect of the plaintiff's language impairment, her age, now 54 years seven months, and her limited education, by a passing acknowledgment of severity. On remand the administration should consider the implications of *Johnson.*

■ The administration should also consider that the plaintiff need not prove the etiology of her conditions, only that she have medically ascertainable conditions that are likely to be associated with symptoms such as pain and fatigue, *Sparks v. Bowen,* 807 F.2d 616 (7th Cir.1986). Pain which is associated with a medically ascertainable cause may disable a person for purposes of the Social Security Act, if the medical condition can reasonably be expected to produce the pain, *id.,* 42 U.S.C. § 423(d)(5)(A).

The plaintiff's subjective complaints in this case are supported by the testimony of her husband and by medical evidence as well. Furthermore, the ALJ, having observed the plaintiff at the hearing, did not reject her complaints as incredible.

■ The court finds the evidence inconclusive with respect to Mrs. Scott's capacity, considering her combined impairments, to sustain an eight hour day as "counter attendant" which appears to have been an isolated part of her actual duties. If she in fact cannot, the administration must decide the case at level 5 as did the ALJ. Where the findings of the Secretary, here the Appeals Council, are not supported by substantial evidence but do not provide sufficient evidence to support reversal and a finding of disability, remand is appropriate,

*Bauzo,* 803 F.2d at 926, *Garfield v. Schweiker,* 732 F.2d 605, 610 n. 8 (7th Cir.1984). The case is, therefore, remanded for a new hearing for introduction of any additional evidence, and for findings consistent with this opinion.

SO ORDERED.