**William E. WIEGMANN, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of the Department of Health and Human Services, Defendant.**

**No. 85 C 408.**

United States District Court, N.D. Illinois, E.D.

June 25, 1987.

R. Edward Bates, Naperville, Ill., for plaintiff.

Thomas P. Walsh, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

On July 11, 1983, William E. Wiegmann filed for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423(a)(1) and for supplemental security income under Title XVI of the Act, 42 U.S.C. § 1381a. Because the Secretary of Health and Human Services[1] ("Secretary") found that Wiegmann was not "disabled" within the meaning of the Act, the Secretary denied Wiegmann disability benefits at four separate levels of administrative review. Wiegmann now seeks judicial review under 42 U.S.C. § 405(g) of the Secretary's findings and conclusions. Presently before the court are the parties' cross-motions for summary judgment on the question of whether the court should affirm, reverse or vacate the Secretary's decision. For the reasons given in this opinion, the court vacates the Secretary's decision and remands the case for further factual findings consistent with this opinion.

At the time of his hearing before the Administrative Law Judge ("ALJ"), Wiegmann was 47 years old and had the equivalent of a high school education. From 1959 until he was laid off in 1982, he worked either as a journeyman bricklayer or auto mechanic. On April 23, 1983, he suffered a brain injury which was later diagnosed as a large subarchnoid hemorrhage. On May 27, 1983, Wiegmann underwent brain surgery for purposes of repairing an aneurysm that had been discovered in his right posterior communicating artery. After being released from the hospital, he was readmitted on June 6, 1983 after becoming violent, destructive and homicidal. Apparently he had attempted to ravage his house and kill his ex-wife with a sledge hammer.

Although eventually Wiegmann recovered from his violent seizures, he has been unemployed since 1982 and his daily routine is best characterized as inactive. He resides with his ex-wife and his daughter who care for him at their home in Romeoville, Illinois. Generally, they prepare meals for him and accompany him whenever he leaves home. Reading or watching television gives him a headache, and he is unable to complete even the simplest of tasks which he starts. His memory is virtually nonexistent, for he is unable to remember simple events such as what he had for breakfast. Wiegmann rarely socializes with people other than those he lives with, his brother or neighbors.

According to Wiegmann's medical records, he suffers from chronic organic brain syndrome, a malady which significantly impairs his memory and to a lessor extent affects his cognitive skills. Certified Administrative Record ("Record") at 222. His treating physician, Dr. O. Howard Reichman, found Wiegmann to be

---

1. Pursuant to Federal Rule of Civil Procedure 25(d)(1), the court substitutes Otis R. Bowen for Margaret Heckler as the defendant in this action.

totally and permanently disabled so as to be unable to engage in "any substantial gainful activity." *Id.* at 225. Dr. Reichman referred Wiegmann to a clinical psychologist, Dr. Jack Arbit, who stated in his report that Wiegmann "functions at an extremely simplistic level, psychologically impoverished and psychological impotent." *Id.* at 222. Dr. M. Julia DosSautos, a consultative physician, examined Wiegmann and concluded that Wiegmann was recovering from alcohol abuse in addition to suffering from an organic personality disorder. *Id.* at 194. Dr. DosSautos found Wiegmann to be interested in his family and friends and concluded that his thought process was well connected.

In his ruling denying Wiegmann disability benefits, the ALJ appropriately considered the five-step sequential evaluation process set forth in the regulations promulgated under the Act. *See* 20 C.F.R. §§ 404.1520 & 416.420 (1986). Under the first step, the ALJ found that at the time of the hearing Wiegmann had not engaged in any substantial gainful activity since April 23, 1983. Record at 18. Pursuant to steps 2 and 3, the ALJ concluded that Wiegmann's impairment was "severe" but that Wiegmann did not have an impairment listed in or medically equal to those impairments listed in Appendix 1, Subpart P, Regulation No. 4 of the regulations. *Id.* Under steps 4 and 5, the ALJ found that Wiegmann could not return to one of his past jobs, but that Wiegmann had "the residual functional capacity to perform simple, low stress, unskilled work not requiring interaction with the public." *Id.* at 18–19. Taking into consideration Wiegmann's age and education, the ALJ stated that "the principles of Medical-Vocational Rule 204.00 indicate that there are a substantial number of unskilled jobs in the national economy which [Wiegmann] can perform." *Id.* at 18.

The ALJ's findings are conclusive insofar as they are "supported by substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is evidence that "a reasonable mind might accept as adequate to support [the] conclusion." *Richardson v. Perales,*

402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). *See generally Bauzo v. Bowen,* 803 F.2d 917, 923 (7th Cir.1986) (the court set forth in detail the standard of review of an ALJ's decision). In deciding if the ALJ's decision is supported by substantial evidence, the court must read the record as a whole. *See Garfield v. Schweiker,* 732 F.2d 605, 607 (7th Cir.1984). Where the claimant presents considerable evidence in support of his claims for benefits, "a minimal level of articulation of the ALJ's assessment of the evidence is required" in the ALJ's findings. *Zblewski v. Schweiker,* 732 F.2d 75, 79 (7th Cir.1984).

Taking the foregoing principles into consideration, the court finds that the existing record does not support the ALJ's decision. Since Wiegmann's impairment is nonexertional, the ALJ should not have ruled solely based on the "grid" in the regulations when he determined whether Wiegmann is disabled. *See Warmoth v. Bowen,* 798 F.2d 1109, 1110 (7th Cir.1986). In cases such as this where the claimant's impairment is solely nonexertional, the ALJ must make the disability determination based on the principles of the regulations and only "consideration" of the grid. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(1) (1986). Because the ALJ concluded that Wiegmann's nonexertional impairment is severe, resolution of the question of whether jobs which Wiegmann can perform are available in the national economy requires consultation with specified occupational reference materials or the services of a vocational expert. *Warmoth,* 798 F.2d at 1110. There must be "reliable evidence of some kind that would persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available." *Id.* at 1112. Since the record in the present case admits of none, the court remands the case so that the requisite evidence can be introduced. If in fact the Secretary does introduce such evidence, the ALJ should give Wiegmann the opportunity to rebut the evidence through either the testimony or

written responses of his treating physician.[2]

## Conclusion

The court vacates the Secretary's decision and remands the case for further factual findings and reconsideration in light of this opinion.

---

**2.** Since this is a case where observation of the claimant over an extended period of time appears essential to an accurate understanding of his condition, the ALJ should give the opinion of the claimant's treating physician the weight the opinion is due. *See Garrison v. Heckler,* 765 F.2d 710, 715 (7th Cir.1985).