**Mary I. BRACKEN, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**No. TH 88–151–C.**

United States District Court,
S.D. Indiana,
Terre Haute Division.

Aug. 31, 1990.

Landyn K. Harmon, Trueblood Harmon Carter & Cook, Terre Haute, Ind., for plaintiff.

Sue Hendricks Bailey, Indianapolis, Ind., for defendant.

**248**

MEMORANDUM

BROOKS, Chief Judge.

This matter is before the Court upon plaintiff's Complaint for review of a final decision of the Secretary of Health and Human Services (hereafter "Secretary") denying plaintiff's request for a period of disability and disability insurance benefits under Sections 216(i) and 223, respectively, of the Social Security Act (hereafter "the Act"), 42 U.S.C. §§ 416(i) and 423. The defendant Secretary has filed a certified copy of the administrative record with the Answer.

*History*

At the time of her hearing, the plaintiff was a 44-year-old woman who had completed the tenth grade. She last worked as a dishwasher in December, 1983. She has also worked as a restaurant cashier, a waitress, a cook, a laundromat cleaner and a nurses aide. She alleges in her application that she became unable to do any work due to degenerative arthritis, diabetes and kidney problems.

Plaintiff filed the current application for Social Security disability insurance benefits on December 2, 1986, alleging she became disabled in December, 1982. (R., pp. 91–94) Plaintiff's disability insured status expired on December 31, 1987. After initial denials of her application, a hearing was held before the Administrative Law Judge (hereafter "ALJ") on January 22, 1988, at which claimant appeared in person and with counsel. Also present were William P. Fisher, M.D., as medical adviser to the ALJ, and Stephanie Archer, as vocation expert. By decision dated February 1, 1988, the ALJ concluded that the plaintiff was not disabled from December, 1983, until November 14, 1985, finding that she had the residual functional capacity to perform at least sedentary work activity and that there were numerous occupations which she could have performed during that time. The ALJ did, however, find that since No-

vember 14, 1985, the severity of claimant's impairment meets and/or equals the requirements of Section 9.08 and/or 11.00 C, Appendix 1, Subpart P, Regulations No. 4, and has precluded her from working for at least 12 months.

On its own motion, however, the Appeals Council reversed, denying disability benefits entirely, by a decision dated July 7, 1988. The Appeals Council specifically determined that the plaintiff retained the residual functional capacity for *light* work not involving complex or detailed instructions, and was not, therefore, precluded from performing her past relevant work as a restaurant cashier and/or restaurant waitress.

This Court has jurisdiction to undertake such a review of the entire record pursuant to 42 U.S.C. § 405(g), which provides:

**JUDICIAL REVIEW.** Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after mailing to him of notice of such decision or within such further time as the Secretary may allow.

The plaintiff timely filed her Complaint seeking review of that decision on September 13, 1988.[1]

*Discussion*

In order to be eligible for disability insurance benefits, the plaintiff must establish that she is under a disability within the meaning of the Act. "Disability" is defined at 42 U.S.C. § 423(d)(1)(A) as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . . ."

Section 423 further provides:

---

**1.** Although plaintiff did not file her action in this Court within the 60 days required in 42 U.S.C. § 405(g), that section provides that the Secretary may allow greater time. Here, by filing its appropriate Answer, the Court finds that the Secretary waives any timeliness objection.

[A]n individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work....

42 U.S.C. § 423(d)(2)(A).

Plaintiff has the burden of proving the existence of a condition or conditions (within the statutorily defined special earnings period for her Title II claim) which individually or in combination meet the statutory standards. 42 U.S.C. § 423(d)(5). Once it is established that plaintiff is not working and is no longer able to perform past relevant work, the burden then shifts to the defendant Secretary to prove that there is available some other substantial gainful employment which the claimant is able to perform. *Lauer v. Bowen*, 818 F.2d 636 (7th Cir.1987); *McNeil v. Califano*, 614 F.2d 142 (7th Cir.1980).

The statute provides that the defendant Secretary's findings and inferences reasonably drawn therefrom, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g); *Schmoll v. Harris*, 636 F.2d 1146 (7th Cir.1980). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Bibbs v. Secretary of Health, Education & Welfare*, 626 F.2d 526 (7th Cir.1980). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714 (7th Cir.1984) (quoting *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427). *See also Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir.1982); *Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir.1977).

The statutory provisions, along with their accompanying regulations (primarily 20 C.F.R. § 404.1520 (1983)) have led to the establishment of a five-step test to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has summarized this approach as follows:

The following steps are addressed in order. (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe?" (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops inquiry and leads to a determination that the claimant is not disabled.

*Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir.1984) (quoting *Garfield v. Schweiker*, 732 F.2d 605, 607 n. 2 (7th Cir.1984)); *see also* 20 C.F.R. § 404.1520.

In this case, the Appeals Council reached its decision at the fourth step of the evaluation procedure. They concluded that the plaintiff could return to her past relevant work as a restaurant cashier and/or restaurant waitress. (R., p. 14)

Although plaintiff does not cite the Court to specific error of the Appeals Council, having chosen not to file a brief, the Complaint requests, in part, that the Court reinstate plaintiff's disability benefits. Apparently, plaintiff urges that this Court accept the position of the ALJ's decision, which granted benefits based on a step 3 determination. It is here, then, where the Court begins its review of the Appeals Council's decision.

The ALJ determined that the claimant has severe diabetes mellitus and peripheral neuropathy which, as of November 14, 1985, met or equalled in severity the listings at Section 9.08 and/or 11.00 C, Appendix 1, Subpart P, Regulations No. 4, and that such condition was expected to last at least 12 months.

The medical evidence with regard to these conditions was as follows:

1. On November 14, 1985, a consultative examination was performed by Raj Jeevan, M.D. (R., pp. 252–257) Dr. Jeevan noted that claimant was suffering from diabetic peripheral neuropathy. He indicated that touch and pain sensations were markedly lower below both knees and on both sides. He also noted that her knee and ankle reflexes were diminished on both sides. He stated that gait was good and that no staggering was noted.

2. On September 8, 1986, an electromyelogram was performed on claimant. (R., p. 258) The interpretations of John C. Kincaid, M.D., of that examination indicated findings consistent with generalized neuropathy.

3. On November 12, 1986, claimant was seen by John E. Kalsbeck, M.D., a neurosurgeon. Dr. Kalsbeck concluded from his examination of claimant that she suffered from numbness and decreased sensation in all four extremities, greater peripherally. (R., p. 260) He also noted that claimant's reflexes were decreased. He concluded that these observations are typical of peripheral neuropathy.

4. Claimant was hospitalized on January 28, 1987, due to a fall while descending steps. The emergency room report documented that the neurological exam demonstrated decreased muscle stretch reflexes distally. (R., p. 264) S. Beltz, M.D., the emergency room physician, also noted decreased pin prick sensation in a stocking glove fashion distal to the elbow and distal to the knee.

5. On February 10, 1987, claimant underwent another consultative examination, this time by R.J. Reynolds, M.D. Dr. Reynolds indicated that patellar reflexes were extremely difficult to elicit and were hypoactive. (R., p. 270) He also noted that the achilles tendons were bilaterally absent. Dr. Reynolds concluded that claimant had early diabetic neuropathy.

6. A July 8, 1986 report of a bone scan done of claimant's feet indicated that the increased activity of those bones was consistent with diabetic neuropathy. (R., p. 295)

Additionally, the ALJ noted Dr. Fisher's acceptance of claimant's testimony of significant impairment in the use of her fingers, hands and arms for at least the two years preceding the hearing date; Dr. Fisher indicated that this testimony was consistent with the medical evidence in the record. (R., pp. 76–77) In *Orlando v. Heckler*, 776 F.2d 209 (7th Cir.1985), the Seventh Circuit Court of Appeals stated that in order to "reject the claimant's testimony about his or her physical condition, the administrative law judge must specifically conclude that the claimant's testimony is not credible." *Id.* at 213. Here, the ALJ was clearly adopting Dr. Fisher's assessment of claimant and her testimony as to her physical limitations. When the Appeals Council rejects such a credibility finding, it should do so expressly, stating its reasons for such a decision. *Bauzo v. Bowen*, 803 F.2d 917, 922 (7th Cir.1986). The Appeals Council made no such finding here and provides no reasons for such a conclusion.

The only contrary medical evidence to which the Appeals Council refers is the report of Paul G. Ventry, M.D., a medical consultant to the Appeals Council. (R., pp. 324–325) Dr. Ventry undertook a review of the medical evidence in the record and concluded that claimant's condition did not meet or equal Listing 9.08. Dr. Ventry stated that "[n]o real evidence of peripheral neuropathy has been demonstrated." (R., p. 325) This is in direct conflict with *all* the other medical evidence in the record and the medical testimony at the hearing.

Claimant's own treating physician indicated his agreement with the evaluation of Dr. Kalsbeck that claimant was suffering from diabetic neuropathy. (R., p. 328)

The Seventh Circuit, in *Bauzo, supra,* stated that "[a] reviewing court must look at the entire record of the proceedings to determine whether there is substantial evidence supporting the Appeals Council deci-

sion." 803 F.2d at 923. The Court went on to say, "Both the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be examined, since review of the substantiality of evidence takes into account whatever in the record fairly detracts from its weight. *Stephens v. Heckler*, 766 F.2d 284, 288 (7th Cir.1985) citing *Universal Camera [Co. v. NLRB]*, 340 U.S. [456] at 488 [71 S.Ct. 456 at 464, 95 L.Ed. 456]." *Id.*

■ Additionally, the weight given examining and treating physicians' opinions is obviously greater than that given to the opinion of a physician who has not personally examined claimant. *Whitney v. Schweiker*, 695 F.2d at 789; *Allen v. Weinberger*, 552 F.2d at 786. *Whitney* and *Allen* caution that such reports deserve little weight.

■ Since the report of Dr. Ventry provided the only basis for the Appeals Council's reversal of the ALJ's recommended decision and stands in stark contrast to all other medical evidence of record, the Court finds that the Appeals Council's decision, as the final decision of the Secretary, is not supported by substantial evidence and should be reversed.

Since the Court is reversing the Appeals Council's determination at step 3 of the inquiry, a remand is not necessary; an affirmative answer at step 3 leads to a determination that claimant is disabled. *Halvorsen*, 743 F.2d at 1225. A remand is not necessary to determine onset date; the only evidence in the record, as amply demonstrated by the ALJ's opinion, points to disability *at the latest* by November 14, 1985. Dr. Fisher, at the hearing before the ALJ, indicated that claimant's condition met or equalled in severity the listings at Sections 9.08 A and/or 11.00 C by that date.

The Court therefore REVERSES the decision of the Appeals Council and awards benefits beginning November 14, 1985.