**William PAIGE, Jr., SS #
428–58–4699, Plaintiff,**

**v.**

**Otis BOWEN, Secretary of Health and Human Services, Defendant.**

**No. 87 C 9456.**

United States District Court,
N.D. Illinois, E.D.

Sept. 22, 1988.

Sherry A. Berliner, Legal Assistance, Foundation of Chicago, Chicago, Ill., for plaintiff.

Anton R. Valukas, U.S. Atty., Jeanne M. Witherspoon, Asst. U.S. Atty., Donna Morros Weinstein, Chief Counsel, Gary A. Sultz, Asst. Regional Counsel, Dept. of Health & Human Services, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

William Paige, Jr. ("Paige") seeks judicial review of a final decision by the Secretary of Health and Human Services ("Secretary") denying Paige's claim for disability insurance and supplemental security income ("SSI") benefits under Social Security Act ("Act") §§ 216(i), 223 and 1602, 42 U.S.C. §§ 416(i), 423 and 1381a.[1] Although Administrative Law Judge ("ALJ") Robert Doyle had issued a decision recommending such benefits, on June 22, 1987 the Appeals Council ("Council") rejected that recommendation and ruled Paige was not disabled. Paige has brought this action under Section 405(g) to appeal that final determination.

Paige and Secretary have now filed cross-motions for summary judgment. For the reasons stated in this memorandum opinion and order, both parties' motions are denied and this action is remanded to Secretary for further proceedings consistent with this opinion.

---

1. All further citations to Act provisions will take the form "Section—," referring to the Title 42 numbering rather than to the Act's internal numbering. Regulations drawn from 20 C.F.R. will be cited "Reg. § —."

## Procedural History

On November 10, 1983 Paige applied for benefits under the Act.[2] When his application was denied, both initially and on reconsideration, Paige requested and was granted a hearing.

On July 10, 1984 that hearing, at which Paige appeared without counsel, was held before ALJ Mark Haase. On September 27, 1985 (not a misprint—over a year later!) the ALJ issued his decision (R. 247–53). ALJ Haase denied Paige benefits because he concluded Paige's impairments were insufficiently severe to satisfy step 2 of the sequential disability determination process detailed later in this opinion. When our Court of Appeals then invalidated step 2 in *Johnson v. Heckler,* 769 F.2d 1202, 1209–13 (7th Cir.1985), Council remanded the case for a second administrative hearing and decision.[3]

On remand the case was assigned to ALJ Doyle, who conducted the April 15, 1986 hearing (the "Hearing") at which Paige appeared, this time represented by counsel. ALJ Doyle also heard evidence from medical advisor Dr. Robin Fintel and vocational expert Thomas Grezik ("Grezik"). As already stated, Paige won before ALJ Doyle, only to lose on review by Council—the decision that represents Secretary's final word on the matter.

## Statutory Framework

To establish entitlement to disability and SSI benefits, a claimant must show he or she is "disabled." Sections 416(i)(1) and 423(d) define "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months....

Secretary has promulgated extensive procedural regulations for determining whether an applicant is disabled. *Garfield v. Schweiker,* 732 F.2d 605, 607 n. 2 (7th Cir.1984) summarizes Secretary's 5-step test for determining "disability":

> The following steps are addressed in order. (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled. 20 C.F.R. § 404.1520 (1983).

Once a claimant has demonstrated an impairment of sufficient severity to prevail at step 4, *Smith v. Schweiker,* 735 F.2d 267, 270 (7th Cir.1984) teaches:

> The burden then shift[s] to the agency to show the claimant retained the residual functional capacity to perform other work existing in the national economy.

At that fifth and final step Secretary must consider all the claimant's physical and mental impairments (Regs. §§ 404.-1561, 416.961), the claimant's age (Regs. §§ 404.1563, 416.963), education (Regs. §§ 404.1564, 416.964) and work experience

---

**2.** Paige twice previously applied for benefits under the Act. Both his 1975 and 1982 applications were denied (see R. 184–204), and Paige does not now (as indeed he cannot) challenge those decisions that he failed to appeal.

**3.** *Johnson* was later vacated (107 S.Ct. 3202 (1987)) when the Supreme Court upheld the validity of step 2 in *Bowen v. Yuckert,* —— U.S. ——, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987)—a decision handed down after ALJ Doyle's decision on remand (discussed in the next paragraph of the text) and two weeks before Council's final decision now under review. Council (perhaps unaware that step 2 had just been upheld) did not take that into consideration in its decision. That omission, however, has had no impact on this case, for Council acknowledges that Paige has impairments that, though not ultimately rising to the level of a disability, suffice for a step 2 "severity" finding (*Yuckert,* 107 S.Ct. at 2297 teaches step 2 is merely designed to "identify[ ] at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found disabled even if their age, education, and experience were taken into account").

(Regs. §§ 404.1565 and .1568, 416.965 and .968). Toward that end the ALJ typically looks to the "Grid," medical-vocational guidelines (found at 20 C.F.R. Subpart P, Appendix 2) that balance the claimant's physical limitations against the other relevant factors (Regs. §§ 404.1569, 416.969). Before doing so the ALJ must determine what type of work a claimant is capable of performing in light of his or her impairments. Secretary's regulations define types of work using physical exertion criteria (Regs. §§ 404.1567, 416.967).

Alternatively the ALJ may base the step 5 determination on other evidence, including the assessment of a vocational expert (Regs. §§ 404.1566(e), 416.966(e)). Indeed, when a claimant suffers from nonexertional impairments exclusively or in addition to exertional impairments, the ALJ may not be able to rely solely on the Grid—resort to a vocational expert may be required (see Reg. Subpart P, Appendix 2, § 200.00(e); *Warmoth v. Bowen,* 798 F.2d 1109, 1110 (7th Cir.1986) (per curiam)).

In all events, Secretary's decision must be upheld unless (1) the findings are not supported by substantial evidence or (2) Secretary has applied incorrect legal standards (*Reynolds v. Bowen,* 844 F.2d 451, 455–56 (7th Cir.1988)). *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938) has defined "substantial evidence" as:

> more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

4. Council's decision that Paige was capable of returning to his previous work did not rely on that group of jobs formerly held by Paige, looking instead to his final work. It is therefore unnecessary to go into any further detail about those earlier jobs and their physical demands.

5. That evidence, summarized in the Appendix, should not be misinterpreted as reflecting all the proof on the subject. On the contrary, the record also contains some evidence downgrading the severity of Paige's impairments. But it is important to recognize the abundance of clinical evidence supporting Paige's claims. Before

*Facts*

Paige was born December 25, 1932 (R. 63), making him 53 years old at the time of the Hearing. He has a tenth-grade education. His work history reveals a series of jobs—factory machine operator, lift-truck operator and movie theatre cleaner—characterized by Paige as presenting at least "medium" (and in two instances "heavy") exertional requirements.[4] Paige's last gainful employment was from May 1977 to December 1980 as a security officer for St. Mary's Hospital (R. 65–67). He left that job when he had difficulty staying awake at work because of medication he was taking.

Paige has medical difficulties in two areas: cardiac problems related to long-term hypertension and osteoarthritis that may in part be related to two bullets that have been imbedded in Paige for many years, one near his spine and one in his left hip (R. 268). At this juncture it would not be useful to go through a detailed analysis of Paige's medical record. Suffice it to say that the record includes substantial clinical evidence corroborating Paige's problems in the two areas.[5]

At the Hearing Paige testified to the pain he suffers and his limitations. In summary he said this:[6]

1. Every day he suffers back pain (R. 70) that becomes sharp when he gets excited (R. 71). He has difficulty bending over (*id.*), a problem that gets worse as his activity increases (R. 82).

2. When Paige stands for "a good while," he has swelling in his right ankle (R. 70).

Secretary can validly conclude a claimant is not disabled, he "must articulate his analysis of 'considerable evidence [which] is presented to counter the agency's position,' at least at a minimum level" (*Ray v. Bowen,* 843 F.2d 998, 1002 (7th Cir.1988), quoting *Burnett v. Bowen,* 830 F.2d 731, 735 (7th Cir.1987), in turn quoting *Orlando v. Heckler,* 776 F.2d 209, 213 (7th Cir. 1985)).

6. Because parts of the tape of the Hearing were inaudible and could not be transcribed, the incomplete transcript has limited this Court's review to a minor degree.

3. Each morning Paige also has chest pain, for which he uses nitroglycerin tablets or patches (R. 71–72). That pain occurs with exertion such as climbing stairs (R. 72). Paige described the pain as radiating into his left shoulder (R. 73) as well as being a constant nagging pain (R. 86).

Paige also gave details of his work at St. Mary's Hospital. His duties varied from day to day: He could be assigned to the hospital entrance, to the emergency room or to patrol duty (R. 65–66). Paige said he would be on his feet all day (R. 66) and would also have to participate in periodic fire drills in which he would have to climb stairs and carry firefighting equipment such as hoses (R. 66). Paige also testified to having to restrain patients under the influence of drugs and to being required on occasion either to restrain patients in the psychiatric ward or to intervene in scuffles (R. 66–67). Paige also said he was required to "handle patients" (R. 74). In an earlier questionnaire, Paige stated he would assist nurses in lifting patients (R. 142).

Dr. Fintel testified at the Hearing that Paige's heart condition did not satisfy the requirements for a listed impairment (R. 91–92). She also said Paige's complaints of chest pain were "not really" substantiated by the medical evidence (R. 92), pointing to the lack of an EKG to document the condition while Paige was experiencing discomfort and to the lack of a stress test to substantiate his pain (R. 92–93). In response to an inquiry from the ALJ as to whether Paige could stand and walk for an eight hour day and lift 30 pounds or more, Dr. Fintel opined (R. 93):

> I think so, but again, I don't—I don't have the—if he did well on a stress test, then I could say, you know, substantiate that with some—some—a more projective (INAUDIBLE).

When Dr. Fintel was later provided with the results of Paige's 1986 stress tests, she submitted a brief handwritten report saying Paige retained "the residual functional capacity ["RFC"] to perform light to moderate workload with no restrictions" (R. 284) (emphasis omitted).[7]

Vocational expert Grezik also testified at the Hearing. He responded to two hypothetical scenarios from the ALJ, one accepting Paige's complaints of pain and one not crediting Paige's testimony. Under the first set of assumptions, Grezik said Paige would not be able to perform his previous jobs and would also be unable to perform any "substantial gainful activity" (R. 99). Under the second set of assumptions, Grezik continued to believe Paige would be unable to return to his previous work but said Paige would be able to perform a number of jobs for which he would not have to stand more than two hours a day and to lift more than 10 pounds frequently or 20 pounds occasionally (R. 101).

*Secretary's Decision*

ALJ Doyle's recommended decision found Paige suffers from ischemic heart disease, hypertension and osteoarthritis of the spine (R. 22). He also found Paige's "complaints of pain and limitations are substantiated by the medical evidence" (R. 24). After noting Dr. Fintel had never examined Paige, the ALJ commented (R. 22):

> The Administrative Law Judge does give greater weight to the opinions of the treating physicians and finds the conclusions by Dr. Fintel that the claimant retains the residual functional capacity for light and medium work activities are not substantiated by the clinical evidence of record.

ALJ Doyle then concluded Paige retained only the RFC to do work without prolonged standing or walking (R. 24). Accordingly Paige was unable to perform his past rele-

---

7. Dr. Fintel's only comment as to Paige's arthritis-related complaints came in response to a question from Paige's attorney as to whether she was basing her opinion solely on Paige's heart problems. She responded (R. 94):

> A. Yes, I have taken his other complaints into my decision. In regard to his back dis-

comfort, I go to the last exam from 1983, the neurological exam shows good coordination, his gait is satisfactory, he's not requiring any aids, really there are no (INAUDIBLE) neurological findings to substantiate that he's having, you know, neurological problems.

vant work, including his job as a security officer, and was limited to doing sedentary work. After Paige's RFC as well as his age, education and skill level were plugged into the Grid, ALJ Doyle concluded Paige must be found disabled (*id.*) and had been so since November 22, 1983 (R. 25).

After reviewing the medical record, the Hearing testimony and ALJ Doyle's recommendation, Council made these findings (R. 14):

> 3. The claimant has the following severe impairments: hypertension and osteoarthritis, but does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.
>
> 4. The claimant's subjective complaints of severe pain are not credible and are not supported by the medical evidence of record.
>
> 5. The claimant has the residual functional capacity to perform work-related functions except for work involving lifting and carrying more than 20 pounds.
>
> 6. The claimant's past relevant work as a security guard, as the job is generally performed in the national economy, does not require lifting more than 20 pounds.
>
> 7. The claimant's impairments do not prevent the performance of this past relevant work.
>
> 8. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

Because it had found Paige not disabled at step 4, Council did not proceed to step 5. It did, however, conclude Paige retained "the capacity for a full range of light work" (R. 13). As to his complaints of pain, Council concluded the record did not include "medical findings that could be expected to produce pain that would preclude light work activity" (*id.*).

*Review of Secretary's Decision*

As the ensuing discussion will reflect, it is readily apparent that Secretary's decision cannot stand and that the case must, at a minimum, be remanded for further consideration. What presents a closer question is the appropriate remedy: whether to remand the case or to reverse Secretary's decision outright, ordering that Paige receive his benefits.

**1. Error at Step 4**

■ Council plainly erred in deciding Paige could return to his past relevant work as a "security guard." [8] It initially found Paige retained the capacity for light work, then determined the "security guard" job was in that category (R. 13). To reach the latter result, Council referred to the description of a security guard's duties in the Department of Labor's Dictionary of Occupational Titles ("DOT"), which then defines that job as "light" work (DOT § 372.667–034). Council joined its two findings to conclude Paige could return to his work as a security guard.

That flawed analysis totally ignores the teaching of *Strittmatter v. Schweiker*, 729 F.2d 507 (7th Cir.1984) that Secretary must compare the demands of Paige's *actual* past work to his "present physical capacities" (*id.* at 509). It is not sufficient to pigeonhole a claimant's past work as "light" and then conclude he or she retains the capacity for work falling in that classification. *Strittmatter*'s statement (*id.*) that "sedentary work is not homogeneous with respect to strenuousness" is equally applicable to light work. To quote *Strittmatter* once more, adapted to the present context (*id.*):

> [Council] was required to determine the physical demands of the particular type of [light] work that this claimant had done and then compare those demands to [his] present capabilities.

---

**8.** Council describes Paige's position as a security "guard," while Paige referred to his job as being a security "officer." Normally that kind of distinction would be a meaningless semantic quibble. Here, however, it carries significance be- cause of Secretary's application of generic job classifications to describe the demands of Paige's previous position. That subject is dealt with in the following text discussion.

Council failed to perform the necessary individually-tailored analysis.

Secretary attempts to defend Council's action by pointing out an available alternative: Secretary may demonstrate that Paige retains the RFC to perform either (1) the actual demands of his past work *or* (2) the functional demands of that job "as generally required by employers throughout the national economy" (*Orlando*, 776 F.2d at 215–16, citing Social Security Ruling 82–61). Under that second alternative, even if Paige's work for St. Mary's Hospital involved duties that exceeded the light work category, such as having to lift a 30–pound fire hose, the job of security guard as generally performed (and thus as presumptively available to Paige) would not require those more strenuous tasks.

But that argument too rests on a false premise. On the record here, it cannot be said that the job of a hospital security officer, as generally performed around the country, is light work. Paige effectively rebuts Secretary's use of the DOT listings for that purpose. He has shown the DOT job category of "security guard" is wholly inadequate to describe the full range of duties he performed. That category has nothing corresponding to Paige's exertion-demanding responsibilities in the area of fire drills, restraining violent patients and the like. Paige points out the DOT listing for "psychiatric aide" and "hospital entrance attendant" (DOT §§ 355.377–014, 355.677–014), two jobs categorized by the DOT as requiring medium (not light) exertional capabilities, capture some of the other tasks Paige was called upon to perform (Paige R.Mem. 4–6).

■ While Secretary may permissibly categorize the exertional demands of a claimant's past job by finding the appropriate DOT listing, he must find such a listing that adequately corresponds to the claimant's job. Mechanical application of the DOT "security guard" listing is simply wrong here. Paige's job at St. Mary's is more readily described as a composite of several DOT listings such as "security guard" and "hospital entrance attendant." Social Security Ruling 82–61 (on which *Or-*

*lando* and Secretary rely) deals with precisely that situation:

> Composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case.

Secretary, not having followed his own rules, has incorrectly labeled Paige's hospital security officer job as light work.

■ Nor can Secretary pursue the *Orlando* alternative by arguing that even though Paige may have performed some duties beyond the demands of light work, still the hospital security officer job normally does not require those more strenuous tasks. Any such contention must rest on affirmative evidence, such as from a vocational expert, about the typical requirements of security officer work in the hospital context. But the record is devoid of any such evidence. Hence there is no predicate for the conclusion that Paige must be found "not disabled" at step 4 in the disability determination sequence.

Because Council never went on to a full step 5 analysis, the minimum relief to which Paige is entitled would be a remand for an adequate step 4 determination and, if necessary, a step 5 decision. In this instance, however, Council went beyond step 4 to at least one component of a step 5 analysis when it decided Paige retained the RFC for a full range of light work (R. 13). Because that handling violated still another rule of law, and because Council may again be called upon to determine Paige's RFC, this opinion proceeds to discuss Council's mistake.

**2. Council's Failure To Explain Its Rejection of the ALJ's Recommendation**

As noted earlier, ALJ Doyle's recommended decision found Paige's "complaints of pain and limitation are substantiated by the medical evidence," and Paige has the RFC to perform only sedentary work (R. 24). Without referring to those conclusions, Council plainly rejected them. Instead it concluded Paige's complaints of severe pain were neither credible nor sup-

ported by medical evidence (R. 14). It found Paige's pain and medical limitations would not prevent him from work at the "light" rather than "sedentary" level (R. 13). Council's total failure to explain its rejection of the ALJ's findings is an independent reason compelling a remand for further consideration.

When Secretary has committed no error of law, this Court's role is limited to seeing whether Secretary's decision is supported by "substantial evidence" (*Reynolds*, 844 F.2d at 455–56). Even when Council makes Secretary's final decision and in doing so rejects contrary findings by an ALJ, the reviewing standard does not change. As *Parris v. Heckler*, 733 F.2d 324, 326 (4th Cir.1984) (citation omitted) explains:

> The statutorily-mandated deference runs in favor of the Secretary and the Appeals Council, not the ALJ[,] and the Appeals Council may reach conclusions differing from those of the ALJ, which we must uphold if supported by substantial evidence.

■ Our own Court of Appeals has focused more sharply on the treatment of conflicting ALJ and Council findings. *Bauzo v. Bowen*, 803 F.2d 917, 921 (7th Cir.1986) (citations omitted) concurs that in such situations:

> We find convincing the rationale of the Circuits which have held that judicial review should be limited to determining whether the Appeals Council's decision is supported by substantial evidence on the record as a whole.

But that final phrase—"on the record as a whole"—has substantive rather than mere-ly semantic content. Any ALJ conclusion that a claimant *is* disabled becomes part of the record against which Council's decision must be measured. *Bauzo, id.* at 922 (citations omitted) therefore went on to say:

> We, therefore, now consider whether the Secretary's decision, as reflected in the Appeals Council's determination, is supported by substantial evidence. In making this determination, we note that although the findings of the ALJ are not binding on the Council, they should not be ignored. The conflicting findings are part of the record as a whole, and will be considered in determining whether the Council's decision is supported by substantial evidence.... Furthermore, when the Appeals Council rejects an ALJ's credibility findings, it should do so expressly and state its reasons for doing so.... This will enable a reviewing court to determine whether the Council's reasons for rejecting the ALJ's credibility findings are based on substantial evidence.[9]

■ ALJ Doyle's conclusion that Paige's complaints of pain were substantiated by the evidence necessarily encompasses a finding that such subjective complaints were credible. ALJ Doyle saw and heard Paige, while Council did not. Its contrary decision as to Paige's credibility is not supported by substantial evidence, as defined in *Bauzo*, because Council has neither expressly rejected the ALJ's credibility findings nor stated the reasons underlying any such rejection (accord, *Summers v. Bowen*, 813 F.2d 241 (9th Cir.1987) (per curiam)).[10]

9. [Footnote by this Court] Here ALJ Doyle issued a "recommended decision" rather than a fully enforceable decision. Reg. § 404.953(b) allows an ALJ to send the case to Council with a recommended decision when appropriate. But the tentative nature of the ALJ's final decision does not make the standard for review of Council's decision more lenient. Council remains responsible for explaining its rejection of ALJ Doyle's subsidiary findings, which he did not state in tentative or qualified terms.

10. Council should also reconsider its conclusion that Paige's complaints of severe pain are not supported by the medical record. To accept a claimant's complaints of pain, Section 423(d)(5)(A) requires "medical signs and find-ings ... which show the existence of a medical impairment ... which could reasonably be expected to produce the pain or other symptoms alleged ..." (see also *Sparks v. Bowen*, 807 F.2d 616, 618 (7th Cir.1986)). Clearly Paige has shown the existence of medical impairments in the area of both osteoarthritis and hypertensive heart disease. What remains for decision is whether those impairments "could reasonably be expected to produce" the degree of pain Paige alleges. To be sure, Dr. Fintel testified at the Hearing that Paige's complaints of chest pain did not appear substantiated by the medical evidence (R. 92). But in doing so she incorrectly stressed the lack of medical evidence to document Paige's pain (R. 92–93). Paige R. Mem. 8–9 correctly states he is not required to

It must be concluded that no substantial evidence supports Council's decision that Paige retains the RFC for light work.

### 3. Remand or Reversal?

■ What remains to be decided is whether this Court should remand the case to Secretary or reverse outright and order payment of benefits to Paige. Section 405(g) confers judicial authority to affirm, modify or reverse Secretary's decision "with or without remanding the cause for a rehearing" (see also 4 Social Security Law and Practice § 55:60).

Only the distressing length of Paige's tortuous path through the system would ordinarily counsel reversal here. In other respects it appears remand is the appropriate remedy, for it cannot fairly be viewed as a foregone conclusion (though it seems most probable) that Paige is "disabled" under the appropriate rules and regulations.

One of this Court's colleagues, Honorable James Moran, recently summarized the relevant factors in deciding whether or not to remand a disability case. *Bell v. Bowen,* 658 F.Supp. 533, 538–39 (N.D.Ill.1987) (citations omitted) put it in these terms:

> An award of benefits is appropriate when substantial evidence on the record as a whole indicates that the claimant is disabled, and the *weight* of the evidence indicates that a remand would only delay the receipt of benefits while serving no useful purpose.... Reversal and an award of benefits is particularly indicated when administrative and judicial proceedings on the claim have already consumed a substantial amount of time ...; when the secretary has had an opportunity to develop the record on an outcome-determinative issue and has failed to produce substantial evidence ...; or when it appears virtually impossible that the Secretary would be able to meet his burden of showing that the claimant can do jobs which exist in sig-

nificant numbers in the national economy....

It is certainly true that Paige's claim has been pending for an inordinate amount of time (almost five years!). It is also true that Secretary had the opportunity to produce substantial evidence in support of his decision and did not do so. But on the other side of the coin, the weight of the evidence does not necessarily indicate that Paige is disabled, and remand may perhaps produce determinative evidence on that score. As this opinion has noted at several points and as the Appendix details, there is a great deal of evidence indicating Paige suffers from potentially disabling limitations—evidence credited by ALJ Doyle. What the record lacks is reliable medical evidence (in either direction) on the crucial question of how those medical conditions limit Paige's ability to work.

Despite the physical bulk of, and the extended period of time covered by, the record here, it contains only three instances in which medical personnel moved beyond identifying Paige's medical condition to comment on the degree to which these problems prevent Paige from working. In 1976 one of Paige's treating physicians, Dr. John Moore, completed a cursory questionnaire in which he said Paige could stand or walk for six hours out of an eight hour day but could frequently lift only ten pounds or less (R. 232–33). No further RFC evaluations apparently occurred until those by Dr. Fintel in 1986. At that time she said, first orally at the Hearing (R. 93) and then in her brief supplemental written report (R. 283–84), that Paige remains capable of light work.

Thus all Secretary and this Court have been tendered are a skeletal RFC evaluation, now over 12 years old, and an even more sketchy opinion from a doctor who has never examined Paige and who may have applied overly demanding standards to her evaluation of his abilities (see nn. 7 and 10). This is not a case where it can

---

submit medical evidence to document the pain itself, rather than a condition that could reasonably account for such pain. Moreover, neither Dr. Fintel nor any other medical expert commented on whether Paige's complaints of back

pain were out of proportion to the documented impairments. Secretary cannot properly reject Paige's subjective complaints without adducing affirmative evidence that Paige's testimony is to be disbelieved.

conclusively be said no useful purpose would be served by remand (as in, e.g., *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir.1980)).

It should, however, be remembered that the relevant date for determining Paige's disability is not today but the period beginning November 22, 1983. On the existing evidence, ALJ Doyle has found Paige could do no more than sedentary work at that time (a finding that labeled Paige "disabled" under the Grid). To the extent that it may prove impossible on remand to adduce any further evidence bearing on Paige's situation as of that by-now-five-year-old date, it would surely seem the evidentiary failure now ought to work against Secretary and not against Paige— else this Court's present decision to remand rather than reverse (as it well could have done) would create an injustice under the circumstances.

### Conclusion

This Court finds Secretary erred:

1. at step 4 of the disability determination process by failing to compare Paige's present physical capabilities to:

(a) the actual demands of his former work as a security officer for St. Mary's Hospital or

(b) the demands of that occupation as generally performed in the national economy; and

2. by failing to provide substantial evidence for its implicit rejection of ALJ Doyle's determination that Paige's complaints of pain and limitation were valid.

This action is remanded to Secretary for the correct step 4 evaluation and, if necessary, a step 5 evaluation of Paige's disability in accordance with this opinion. Because Paige's application has been pending for an unacceptably long period, Secretary is ordered to conduct an expedited review and complete his determination by December 31, 1988.

### Appendix

As n. 5 to the text indicates, it is relevant to consider the medical evidence supporting Paige's position, even though some evidence might be viewed as pointing the other way. On the record here, ALJ Doyle's crediting of the evidence supporting Paige gives that evidence primary significance. What follows, then, is the pro-Paige evidence:

1. In the area of hypertension and related problems:

(a) Paige's hypertension was diagnosed as far back as 1975 (R. 225). Dr. Fintel, upon reviewing Paige's records, described his hypertension as "mildly ... controlled" by medication (R. 91).

(b) Various electrocardiograms ("EKGs") have revealed "left anterior hemiblock"[1] (R. 163, 172, 176, 239), nonspecific changes to Paige's "T" waves (R. 172, 176, 230, 239) and in one case lateral ischemia (R. 165).[2]

(c) One of Paige's treating physicians (Dr. Apolinario Casaclang) told a Social Security adjudicator that Paige experienced chest pain approximately once a week "which is squeezing and precordial [over the heart] radiating to the left shoulder and neck"—pain for which Paige takes nitroglycerin and analgesics (R. 241).

(d) Ventricular enlargement is revealed both by an EKG (R. 239) and by an echocardiogram (R. 266).

(e) In 1986 a thallium stress test and redistribution study revealed an "abnormal cold area in the posterior ventricular segment ... which is highly suggestive of ischemia" (R. 265).

(f) During a 1986 treadmill exercise test Paige was able to achieve 85% of his maximum heart rate and a "9 METS"

---

**1.** Hemiblock is defined as "Arrest of the impulse in one of the two main divisions of the left branch of the bundle of His" (*Stedman's Medical Dictionary* 630 (5th ed. 1982)). In turn, "bundle" is "A structure composed of a group of fibers, muscular or nervous; a fasciculus" (*id.* at 200). And "His' bundle" is defined as "*truncus* atrioventricularis" (*id.*), the definition of which (*id.* at 1491–92) is long and specialized

enough to reconfirm this Court's choice of law —and never even a thought of medicine—as a profession.

**2.** "Ischemic" heart disease is "Heart disease characterized by deficient blood supply to the heart muscles" (Morton, *Medical Proof of Social Security Disability* 473 (1983)).

exercise level without chest pain, but his EKG showed T and U wave changes (R. 282). That led to the conclusions that (1) Paige had a "slight impaired exercise capacity" and (2) the test was "borderline ... for ischemia" (*id.*).

2. As for Paige's osteoarthritis:

(a) In 1982 an examination revealed Paige exhibited "marked crepitation in both knees"[3] (R. 175). That same examination reported Paige's "lumbosacral spine demonstrates moderate scoliosis deformity[4].... There is also moderate degenerative changes" (R. 180).

(b) In 1984 Dr. Casaclang reported Paige suffered from lower back strain, with flexion limited to 75 degrees and extension to 30 degrees (R. 181).

(c) In 1986 an examination showed (R. 269–70):

(1) minimal osteoarthritis of the cervical and lower lumbar spine,

(2) bony reaction around the bullet in Paige's left hip, and

(3) soft tissue swelling around his right ankle that could be due to arthritis.

Thomas M. Henry, Henry & Henry, Peoria, Ill., for plaintiff.

Bradley W. Murphy, Asst. U.S. Atty., Peoria, Ill., for defendant.

---

**3.** Crepitation is "Noise or vibration produced by rubbing bone or irregular cartilage surfaces together as by movement of patella [kneecap] against [femur] in arthritis and other conditions" (*Stedman's* at 335).

**4.** [Footnote by this Court] Scoliosis is "lateral curvature of the spine" (*Stedman's* at 1265).