Virginia ARMSTRONG, Plaintiff,

v.

Louis W. SULLIVAN, M.D., Defendant.

Civ. A. No. A 91 CA 489.

United States District Court, W.D. Texas, Austin Division.

Feb. 11, 1993.

Harold C. Phillips, Austin, TX, for plaintiff.

James W. Jennings, Jr., U.S. Atty.'s Office, San Antonio, TX, for defendant.

## ORDER

SPARKS, District Judge.

Before the Court is Plaintiff's cause of action against Louis W. Sullivan, Secretary of Health and Human Services. Plaintiff seeks to have the Secretary's decision to deny her disability and supplemental security income benefits reversed or, at least, to have the case remanded.

Pursuant to Title 28 of the United States Code, Section 636(b) and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, as amended, effective July, 1990, the Court assigned this case to Magistrate Judge Capelle on March 17, 1992 (after Judge Smith assigned the case to this Court). On August 21, 1992, the magistrate judge issued his Report and Recommendation. Because the magistrate judge did not completely address the issues raised by Plaintiff, the Court referred the case back to the magistrate judge for a second recommendation, which was filed on October 29, 1992. Plaintiff filed her objections to the Second Report and Recommendation on November 9, 1992.

Having considered the Second Report and Recommendation and Plaintiff's objections thereto, and having undertaken a thorough de novo review of the entire file, the Court disagrees with the magistrate judge's recommendation to affirm the Secretary's decision and determines that the case should be remanded to the Secretary for further consideration.

## I. BACKGROUND

Plaintiff is a 58 year old woman, who was 55 years old at the time of the hearing before the administrative law judge (ALJ). On October 18, 1988, Plaintiff filed applications with the Department of Health and Human Services (DHHS) for disability insurance benefits and supplemental security income under the Social Security Act. At that time, Plaintiff contended she was disabled due to bursitis in her left arm, arthritis, dizzy spells, bleeding ulcers, and diabetes. *See* Record at 75. On January 5, 1989, DHHS notified Plaintiff of their determination that she was not entitled to either disability benefits or supplemental security income benefits. DHHS subsequently declined to grant Plaintiff's February 21, 1989, request for reconsideration, and, on May 10, 1989, Plaintiff requested a hearing before an administrative law judge.

The hearing took place before Administrative Law Judge Harold G. Adams in Austin, Texas, on August 30, 1989. On January 10, 1990, the ALJ issued his decision that Plaintiff was not entitled to either disability or supplemental security income benefits as her impairments were not so severe that she could not perform her prior work as a cashier.

Accordingly, on June 13, 1991, Plaintiff filed this action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the Secretary's final decision.

## II. EVIDENCE BEFORE THE ADMINISTRATIVE LAW JUDGE

During the August 30, 1989 hearing, Plaintiff and a vocational expert testified. In addition, the ALJ considered a significant number of exhibits, including Plaintiff's medical records dating back to 1982.

Plaintiff is an obese black woman who was born on April 16, 1934; attended school through the tenth grade; and has held several unskilled and semi-skilled jobs. Record at 65, 75, 205. Plaintiff testified that she attempted to get a GED, but failed the math portion of the test because "me and math is not." Record at 64. As the ALJ found Plaintiff able to perform only sedentary work, the only possibly relevant prior job is Plaintiff's prior job as a cook (medium) and cashier (sedentary) at a barbecue restaurant, which she held for nine months in late 1979 and 1980. Record at 25, 65, 72, 106.[1]

Plaintiff's testimony at the hearing and her medical records indicate that Plaintiff's back was injured when she was hit by a door while working at Brackenridge Hospital as a housekeeper in 1982. Record at 45, 241–43. Dr. Joe Powell treated Plaintiff for her back injury from May of 1982 until August of 1983. Dr. Powell's initial assessment of Plaintiff's injury was that Plaintiff's pain probably resulted from jarring of ligamentous capsules around the facet joints and the facet joints themselves. Record at 242. He

noted that at that time her x-rays were "nonremarkable except for some mild degenerative changes" and her CT scan was negative. *Id.* Dr. Powell kept Plaintiff off work for approximately a month and a half, until July 12, 1982, when he advised the City of Austin that Plaintiff should be restricted to light duty for a period of time. Record at 239–41. By May of 1983, Dr. Powell had concluded that Plaintiff's chronic low back pain was due in large part to the anxiety of which Plaintiff also complained and that there was "certainly a dearth of organic findings" to support her complaints of pain. Record at 222–30.

In September of 1983, Plaintiff was examined by a medical doctor and a psychologist at the request of the Texas Rehabilitation Commission because Plaintiff had applied for vocational rehabilitation services. Record at 244–47. Dr. Dennis merely indicated that Plaintiff was a 49-year old obese female with diabetes who was seeing Dr. Powell for her back problems. Record at 244–45. The psychologist noted that Plaintiff complained of depression and suffered from "sleep disturbances, high levels of anxiety, stomach problems, back pain, neck pain and leg pain." Record at 246. Although of average intelligence, she tested below average in verbal and mathematic abilities. *Id.* He further noted that Plaintiff had a poor self-concept, displayed a loss of control, and was pessimistic and worried about her future. Record at 247. The psychologist diagnosed Plaintiff as suffering from atypical depression and concluded her prognosis was poor absent therapy. *Id.*

The Record contains no medical records after 1983 until January of 1988 when Plaintiff began seeing Dr. Mayorga at the Rosewood–Zaragosa Clinic. *See* Record at 157. Plaintiff saw Dr. Mayorga for various reasons, including weight loss, back pain, left shoulder and arm pain, inability to grip or hold things in her left hand, arthritis, hypertension, falling, dizziness, diabetes, and gastrointestinal problems. *See* Record at 134–57.

---

1. Ignoring the "cook" portion of the job, which is considered medium work, the ALJ concluded

Plaintiff could still work as a cashier, which is considered sedentary work. *See* Record at 25.

Plaintiff apparently first complained of shoulder pain to a doctor on July 8, 1988, approximately five months after she fell while running in a parking lot. Record at 148, 154, 162, 248. Plaintiff testified that the pain got "worse, worse, worse, and then unbearable." Record at 47. She told the ALJ she hurt twenty-four hours a day, was unable to sleep because of the pain, and could not hold objects in her left hand. Record at 48–50. Plaintiff's complaints of pain and disfunction with respect to her left shoulder, arm, and hand appear repeatedly in Dr. Mayorga's entries to Plaintiff's medical records through January of 1989, after which there are no records of any visits by Plaintiff to the Rosewood–Zaragosa Clinic. *See* Record at 134–54. Dr. Mayorga diagnosed Plaintiff's shoulder pain as bursitis. Record at 142.

Referring to Plaintiff's complaints of inability to sleep because of the pain in her left shoulder and her inability to grasp or hold objects in her left hand, Dr. Mayorga noted on October 3, 1988, "[c]lient fell nine months ago because balance is so unpredictable now." Record at 148. On October 14, 1988, Plaintiff complained of falling frequently and dizziness. Record at 145. On an Austin Travis County Health Department "Return to Work/School" form, Dr. Mayorga indicated that Plaintiff was under his care on January 23, 1989, and was "unable to work at present [because she] has [a] medical disorder with unsteady gait." Record at 211. The note is undated. Similarly, in a September 22, 1989 letter to Plaintiff's legal counsel, Dr. Mayorga stated that "Ms. Armstrong has been diagnosed as having an unsteady gait due to a diabetic neuropathy, with a variable prognosis." Record at 254–55. According to Plaintiff, she began falling approximately a year and a half before the August 30, 1989 hearing and was currently unable to walk in a straight line. Record at 51–53.

Plaintiff's medical records from Brackenridge Hospital also indicate that in 1988 and 1989, Plaintiff was admitted with chest pains, a bleeding ulcer, rectal bleeding, and a hiatal hernia. Record at 166–98. The ALJ did not

find, nor is there any indication from the record, that any of these conditions were severe or lasted for over a year.

With regard to Plaintiff's back and shoulder pain, a January 10, 1989 CT scan performed at Brackenridge Hospital "suggest[ed] left C5–6 disc herniation and probable nerve root encroachment," and X-rays of Plaintiff's shoulder, taken on February 14, 1989, revealed "[n]o significant abnormality." Record at 163–164. One doctor stated that although Plaintiff complained of pain and lack of strength, she had full range of motion in her left shoulder. Record at 159. This doctor again concluded that Plaintiff possibly had bursitis, while another Brackenridge doctor, on November 19, 1988, described Plaintiff's shoulder injury as "ulnar neuropathy." Record at 159, 183. Finding that the disc herniation and nerve root encroachment would not account for Plaintiff's shoulder pain, Plaintiff was given pain medication and referred for physical therapy until April of 1989 when Dr. Race diagnosed Plaintiff's shoulder problem as an incomplete tear of her left rotator cuff. Record at 49, 159–62, 219–220.

In a medical report submitted to the Vocational Rehabilitation Division of the Texas Rehabilitation Commission, which is undated but must have been made between April 28, 1989, when Dr. Race determined surgical repair of Plaintiff's shoulder was necessary and June 21, 1989, when the report was received by the Commission or the ALJ, Dr. Race stated that the approximate date of onset was six months ago. Record at 216. This places the date on which the rotator cuff was torn, at latest, in December of 1988. Dr. Race further stated that Plaintiff's prognosis with respect to physical functioning was good with treatment but poor without; with respect to longevity and general health was good with or without treatment; and with respect to work capacity in Plaintiff's customary occupation was fair with treatment and poor without. *Id.* Finally, Dr. Race indicated that, following the surgical repair of Plaintiff's shoulder,[2] he thought Plaintiff

---

**2.** Although Dr. Race did not specifically state whether or not his opinion with regard to Plain-

tiff's residual work capacity was addressed to Plaintiff's then current capabilities or her capa-

could walk one to two miles; stand 50–75% of the time at work; sit 75% of the time at work; climb four flights of stairs; lift 25–40 pounds; and bend an unlimited number of times. Record at 217.

On August 7, 1989, the day prior to Plaintiff's surgery, Dr. Race noted Plaintiff's "long history of cervical radicular syndromes" and stated that "[t]his has confused the issue, because of her pain into the left shoulder and left upper extremity." Record at 204. Moreover, Dr. Race stated "[t]he patient . . . has had definite problems with left shoulder mobility, aching discomfort at night and limited range of motion, as well as weakness." *Id.* This would appear to contradict Dr. Foot's March 3, 1989 statement that Plaintiff had full range of motion in her left shoulder. *See* Record at 159, 204. Plaintiff testified that Dr. Race told her it would take about six months to recover from the August 8, 1989 surgery. Record at 48.

During the August 30, 1989 hearing before the ALJ, Plaintiff testified that she cries a lot and mostly stays by herself. Record at 53–54. Hearing this, the ALJ ordered a psychiatric exam be administered to Plaintiff. Accordingly, Dr. Richard Bell examined Plaintiff on September 30, 1989. Record at 248. Dr. Bell noted that Plaintiff reported a long history of anxiety and had a "nervous breakdown" in 1968, but has never had psychiatric or psychological treatment. *Id.* Dr. Bell reported that Plaintiff "cannot handle stressful situations well because of her very low stress tolerance and cannot travel to unfamiliar places because she becomes frightened." Record at 250. He further stated that Plaintiff's social functioning "is poor" and that "she relates poorly to people because she is sensitive to rejection." *Id.* However, he also stated that Plaintiff "can complete tasks in a timely manner and over a sustained period, *except as noted above*." *Id.* (emphasis added).

Dr. Bell diagnosed Plaintiff as suffering from major depression and generalized anxiety. *Id.* He concluded that her prognosis for her mood and anxiety disorders was "probably good, if she receives appropriate medication. However, her low stress tolerance and chronic pain prognosis remains uncertain, depending on the outcome of relief of those symptoms." Record at 251. Finally, in a section labelled "Making Occupational Adjustments," Dr. Bell concluded Plaintiff had "no useful ability to" deal with the public or deal with work stresses; had a "seriously limited but not precluded" ability to follow work rules, use judgment, interact with supervisors, function independently, and maintain attention and concentration; and had a "limited but satisfactory" ability to relate to co-workers. Record at 252.

During the August 30, 1989 hearing, the ALJ posed several hypothetical questions to the vocational expert. First, he asked if Plaintiff could perform any of the work she had done in the past fifteen years if she was limited to the extent she alleged, and considering her age, education, and previous work experience. Record at 68–71. The vocational expert answered "no" because she would be too restricted while recovering from the recent surgery. Record at 71. Second, the ALJ asked if he found the Plaintiff could do a full range of sedentary activities, considering her transferable skills, could she perform any semi-skilled or skilled jobs in the area or national economy. The vocational expert answered, "yes, she could perform work as a cashier, her previous employment," but not until she had recovered from her shoulder surgery. Record at 72. Finally, the ALJ asked if Plaintiff could do any job, light or sedentary, considering her transferable skills, with her current limitations. The vocational expert answered he "would say she is excluded from reasonable competitive employment, given her age . . . and that limitation, in addition to the neck problem, and the lack of educational background." Record at 73. The vocational expert did not consider Plaintiff's psychological limitations described by Dr. Bell, as Plaintiff did not see Dr. Bell until after the August 30, 1989 hearing. *See* Record at 74, 248–251.

bilities following surgery, the ALJ apparently assumed the latter. *See* Record at 25. This Court agrees that is the only logical conclusion given

Dr. Race's otherwise dire predictions with regard to Plaintiff's capabilities if Plaintiff did not undergo surgical treatment. *See* Record at 216–17.

## III. DECISION OF THE ALJ

The ALJ issued his decision denying Plaintiff disability and supplemental security income benefits on January 10, 1990. Record at 22. He found Plaintiff suffered from "a combination of severe impairments, namely, history of adult onset diabetes mellitus, hypertension and more recently torn rotator cuff left shoulder. The severity of these impairments, however, do not meet or equal the severity of impairment described in the Listing of impairments in Appendix 1." Record at 24–25. The ALJ found that medication controlled Plaintiff's diabetes and hypertension and that, because she was expected to recover from her shoulder surgery in less than twelve months, Plaintiff's impairments were not disabling. Record at 25. He also found that "[t]here are no objective medical and clinical findings to support the claimant's allegations of severe dizziness and unsteady gait."

With regard to Plaintiff's mental condition, the ALJ found that "while the claimant has been diagnosed as having a major affective disorder, there is no evidence of any marked restriction of activities of daily living or in maintaining social functioning and no evidence of frequent deficiency of concentration or inability to complete tasks in a timely manner over a sustained period." Record at 25. He further stated that the examining psychiatrist "concluded that this condition could be controlled with appropriate medication . . . [and Plaintiff] is restricted only insofar as the necessity of working in a low stressful environment." Record at 26.

Based on these findings and the vocational expert's testimony that if the Plaintiff was "capable of performing sedentary work activity, she could return to her past relevant work as a cashier," the ALJ found Plaintiff could perform her past relevant work as a cashier "in less than 12 continuous months from the date she underwent surgery for her left shoulder" and, therefore, was not disabled. Record at 25–26. In reaching this decision, the ALJ said he gave "full consideration to all evidence presented and [ ] considered the claimant's subjective complaints of pain. . . ." Record at 25.

## IV. ISSUES

Plaintiff asserts two causes of action in her original complaint: (1) that the Secretary erroneously assessed Plaintiff's ability to perform her past relevant work and (2) that there did not exist substantial evidence to support the Secretary's decision. In her Motion for Summary Judgment, filed October 28, 1991, Plaintiff lists the following issues to be decided by this Court:

■ Whether substantial evidence supports the Secretary's conclusion that the Plaintiff can meet the exertional demands of her alleged past relevant work?

■ Whether substantial evidence supports the Secretary's conclusion that the Plaintiff could meet the non-exertional demands of her alleged past relevant work?

■ Whether substantial evidence supports the Secretary's conclusion that the Plaintiff can meet the mental demands of her alleged past relevant work?

■ Whether the Secretary failed to accord substantial weight to the opinion of the Plaintiff's treating physician that she could not meet the demands of her alleged past work?

■ Whether the Secretary failed to determine the impact of Plaintiff's impairments in combination on her functional capacity?

## V. LEGAL ANALYSIS

■ When reviewing a final decision of the Secretary under Section 405(g), a district court may affirm, modify, or reverse the decision, with or without remanding the case, if the decision is not supported by substantial evidence in the record or if an improper legal standard was used. *See Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir.1990); 42 U.S.C. § 405(g) (1991). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1021–22 (quoting *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir.1983)). The court may not reweigh the evidence or substitute its judgment for the Secretary's. *Id.* at 1022 (quoting *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir.1988)).

In order to receive disability insurance benefits and/or supplemental security income benefits, a claimant must be found disabled by the Secretary. 42 U.S.C. § 423 (disability benefits); 42 U.S.C. § 1382(a) (supplemental security income benefits). Disability is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d), § 1382c(a)(3)(A). To determine if a claimant is disabled, the ALJ (or Secretary) utilizes a five-step analysis:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Villa,* 895 F.2d at 1022 (citations omitted).

■ In Plaintiff's case, the ALJ determined that although Plaintiff did suffer from several severe impairments, she was not disabled because she was capable of performing her prior work as a cashier.[3] Plaintiff challenges the ALJ's fact findings as well as the legal standards he employed to make those findings. Thus, this Court must examine the record to determine if substantial evidence existed to support the ALJ's findings and must review, de novo, the ALJ's application of legal principles. *See Dellolio v. Heckler,* 705 F.2d 123, 125 (5th Cir.1983); *Rivera v. Sullivan,* 771 F.Supp. 1339, 1351 (S.D.N.Y. 1991); *Adams v. Schweiker,* 557 F.Supp. 1373, 1375 (S.D.Tex.1983).

### A. Exertional Demands and Limitations

#### 1. Plaintiff's Relevant Past Work

Plaintiff's first attack is on the ALJ's decision that Plaintiff can meet the exertional demands of her "alleged" past relevant[4] work.[5] Plaintiff contends that the ALJ erred in applying the law by separating the cook and cashier portions of her job at the barbecue restaurant and finding that her past relevant work included the job of cashier. Plaintiff also maintains that, even if the job of cashier is a past relevant job, substantial evidence does not support her ability to perform that job.

With regard to Plaintiff's contention that her job at the barbecue restaurant cannot be divided into two different jobs and that, therefore, Plaintiff would be required to meet the exertional demands of the more strenuous cook duties, the Court finds the Plaintiff is correct. Past relevant work is defined as "[t]he actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Bowers v. Railroad Retirement Bd.,* 977 F.2d 1485, 1489 (D.C.Cir.1992); *Cowan v. Sullivan,* 1992 WL 300767, at *2 (E.D.La. Oct. 5, 1992) (quoting Soc.Sec.Rul. 82–61 (1982));

---

3. Plaintiff does not dispute the ALJ's finding that her impairments did not meet or equal any of the listed impairments.

4. "Relevant" work is work the claimant has done in the past fifteen years and which qualifies as substantial gainful activity. *See* 20 C.F.R. § 404.1565(a); *see also id.* § 404.1510 (definition of substantial gainful activity).

5. Exertional demands refer to strength requirements of a job, e.g., how much time a person spends sitting, standing, or walking and how much weight a person must be able to lift and how often. 20 C.F.R. § 416.969a(a) (1992). A person may also be limited by nonexertional limitations such as difficulty in functioning because of anxiety or depression; inability to concentrate; or pain. *See* 40 C.F.R. § 416.969a(a), (c).

*see also Villa,* 895 F.2d at 1022. Generally, ALJs look to the Dictionary of Occupational Titles ("DOT") to determine the general duties of a particular job nationwide. *See Villa,* 895 F.2d at 1022. According to the vocational expert, "cook" is classified as a medium strength requirement and semi-skilled position, and "cashier" (DOT code 211.462–010) is classified as a sedentary and unskilled position, although the vocational expert believes a cashier's job is also a semi-skilled position.[6] Record at 25.

▮ Generally, an ALJ may not find a claimant capable of performing his or her past relevant job, if the claimant is not capable of performing *all* of the duties of that job. *See e.g., Valencia v. Heckler,* 751 F.2d 1082, 1086–87 (9th Cir.1985) (tomato sorting was merely one of plaintiff's duties as an agricultural worker and, thus, was not her past relevant work); *Mills v. Sullivan,* 804 F.Supp. 1048, 1056 n. 20 (N.D.Ill.1992); *Paige v. Bowen,* 695 F.Supp. 975, 980–81 (N.D.Ill.); *Taylor v. Bowen,* 664 F.Supp. 19, 23 (D.Me.1987). As stated by the Ninth Circuit Court of Appeals,

> [e]very occupation consists of a myriad of tasks, each involving different degrees of physical exertion. To classify an applicant's "past relevant work" according to the least demanding function of the claimant's past occupations is contrary to the letter and spirit of the Social Security Act.

*Valencia,* 751 F.2d at 1086. Plaintiff argues that the ALJ did just this and impermissibly determined she could return to her past relevant work, considering only her ability to perform the less demanding duties of a cashier and ignoring her duties as a cook. The Secretary, on the other hand, appears to argue that the cashier portion of Plaintiff's job was not merely a duty, but can be considered as an independent type of work and, therefore, considered separately from the cook portion of the job.

Although there are no circuit court cases precisely on point, two district courts faced with a plaintiff who held a "composite" job support Plaintiff's position. In *Taylor v. Bowen,* the plaintiff's past position was that of office worker/receptionist. *Taylor,* 664 F.Supp. at 22 n. 3. The Court held the ALJ could not find the plaintiff capable of performing her past relevant type of work on the basis she could meet the demands of a receptionist job when she could not meet the demands of a job as an office worker. *Id.* at 23. Similarly, in *Paige v. Bowen,* the Court recognized that a claimant's job may not adequately correspond to the DOT's description of the job title because it entails additional duties not listed in the DOT's description, but which match those duties of other DOT listed jobs with higher exertional demands. *Paige,* 695 F.Supp. at 980–81. The Court quoted that portion of Social Security Ruling 82–61 which states:

> [c]omposite jobs have *significant elements of two or more occupations* and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case.

*Id.* at 981 (quoting Soc.Sec.Rul. 82–61).

Plaintiff's cook/cashier position at the barbecue restaurant is clearly such a "composite" job.[7] *See* Record at 44, 46, 65, 109. As the ALJ has found Plaintiff capable of sedentary work only, and there is no dispute that the "cook" portion of Plaintiff's job would be classified as medium in level even by the DOT, on remand the ALJ must determine if Plaintiff has the residual functional capacity to perform other types of work. *See Abshire v. Bowen,* 848 F.2d 638, 641–42 (5th Cir. 1988).

▮ On remand, however, the ALJ need *not* consider Plaintiff's treating physician's (Dr. Mayorga) medical report dated August 14, 1990, giving his assessment of Plaintiff's residual functional capacity. A court may only order an ALJ to consider additional evidence if there is "new evidence which is material and [ ] there is good cause for the

---

6. Actually, the vocational expert must have intended the Cashier I position (DOT code 211.-362–010), which is sedentary, not the Cashier II position (DOT code 211.462–010), which is considered a light exertional position.

7. In fact, from the Plaintiff's description of the job in her vocational report, it appears she also did a great deal of cleaning, which is certainly not a sedentary job. *See* Record at 109.

failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Dr. Mayorga has been Plaintiff's treating physician since 1988. Surely, Plaintiff and/or her counsel could have obtained Dr. Mayorga's August 14, 1990 report prior to the initial hearing before the ALJ. *See Watts v. Harris,* 614 F.2d 515, 516 (5th Cir.), *cert. denied* 449 U.S. 863, 101 S.Ct. 168, 66 L.Ed.2d 80 (1980). As for Dr. Mayorga's 1990 diagnosis that Plaintiff suffers from diabetic neuropathy, that is cumulative, not new, evidence. *See* Record at 211, 255, 274; *Szubak v. Secretary of Health & Human Services,* 745 F.2d 831, 833 (3d Cir.1984).

### 2. ·Duration of Impairments

In his decision, the ALJ, without elaboration, concluded Plaintiff's torn rotator cuff would not prevent Plaintiff from engaging in her past position as a cashier for twelve continuous months because Plaintiff was expected to recover from her August 1989 surgery within six months. Record at 25–26. The ALJ did not discuss Plaintiff's documented complaints of pain in her left shoulder, which began in July of 1988, or Plaintiff's complaints of pain made at the hearing. *See* Record at 23–27. Nor did the ALJ address Dr. Race's opinion that the onset of Plaintiff's torn rotator cuff took place approximately six months before June at the latest; Dr. Race's belief that Plaintiff's prognosis for work capacity without treatment was poor; or Dr. Race's statement that Plaintiff "has had a long history of increasing discomfort in the left shoulder ... [and] definite problems with left shoulder mobility, aching discomfort at night and limited range of motion, as well as weakness." *See* Record at 23–27, 204, 216.

■ An ALJ may not "pick and choose" only that evidence which supports his decision, but must address and make specific findings regarding the supporting and conflicting evidence, the weight to give that evidence, and reasons for his or her conclusions regarding the evidence. *See DeLoatche v. Heckler,* 715 F.2d 148, 150 (4th Cir.1983); *Rivera,* 771 F.Supp. at 1351, 1354, 1356. Furthermore, the ALJ has an affirmative duty to develop the record and ensure necessary and relevant evidence is produced. *See Rivera,* 771 F.Supp. at 1353 (citations omitted). There is ample evidence in the record to support a finding that Plaintiff's shoulder injury qualified as a severe impairment, precluding her from engaging in past relevant work, for over twelve months. The ALJ was not at liberty to ignore that evidence and, on remand, must consider all the evidence with regard to Plaintiff's shoulder injury, requesting, as necessary, more evidence of the injury's severity prior to the surgery.

### B. *Nonexertional Demands and Limitations*

■ In addition to evaluating the physical, or exertional, demands of a claimant's past work, an ALJ must review the mental demands of the claimant's past work. *Abshire v. Bowen,* 848 F.2d at 641; *DeLoatche,* 715 F.2d at 150; 20 C.F.R. § 404.1520(e), § 416.920(e). There is no evidence in the record of the mental demands of a cashier's job. Nor was the vocational expert apprised of Dr. Bell's subsequent psychological evaluation when he answered the hypothetical questions posed to him by the ALJ, or given another chance to reconsider the demands of Plaintiff's past jobs and Plaintiff's residual functional capacity in light of that evaluation. Nonetheless, although the ALJ acknowledged Plaintiff suffered from a "major affective disorder," he found "there is no evidence of any marked restriction of activities of daily living or in maintaining social functioning and no evidence of frequent deficiency of concentration or inability to complete tasks in a timely manner over a sustained period." Record at 25 (citation omitted). The ALJ further "conclude[d] that the job claimant previously performed as a cashier does not involve working in a highly stressful atmosphere...." Record at 26.

There is not substantial evidence in the record to support the ALJ's above conclusion. As a cashier, Plaintiff must deal both with the public and numbers. Dr. Bell's uncontradicted evidence is that Plaintiff has "no useful ability" to deal with the public or deal with work stresses. Record at 252. Plaintiff has testified she has difficulty with, and is afraid of, math. Record at 64, 246,

249. If the ALJ finds Dr. Bell or Plaintiff lacking in credibility, he must specifically make such findings and give his reasons for doing so. *See Rivera,* 771 F.Supp. at 1351. Furthermore, the ALJ's conclusion that Plaintiff's ability to function socially or maintain concentration are not markedly restricted directly conflicts with Dr. Bell's uncontradicted conclusions that Plaintiff's social functioning is poor and her ability to maintain attention and concentration "seriously limited." *See* Record at 25, 250, 252. Absent evidence of the mental demands of Plaintiff's past work, the ALJ had no basis for his naked conclusion that Plaintiff's psychological difficulties would not preclude her from meeting those demands.

 Because the Court has already ruled above that Plaintiff's past job at the barbecue restaurant may not be divided into two distinct jobs, thereby precluding a finding that her past relevant job was that of a cashier, the ALJ need not make findings of the mental demands of a cashier job except to the extent he considers whether or not operating a cash register and dealing with the public are transferrable skills which Plaintiff could perform in other work. *See* 20 C.F.R. § 404.1565, § 416.965. However, on remand, the ALJ must consider, and make specific findings regarding, Plaintiff's mental limitations when considering her "residual functional capacity together with [her] vocational factors of age, education, and work experience to determine whether [she] can do other work ... that exist[s] in significant numbers in the national economy." *See De-Loatche,* 715 F.2d at 150; 20 C.F.R. § 404.1560(c), § 416.960(c). Also, to the extent the ALJ uses a vocational expert to make this determination, any hypothetical questions posed must include Plaintiff's mental condition. *See Taylor,* 664 F.Supp. at 21.

### C. *Cumulative Impact*

 Finally, Plaintiff complains the ALJ did not consider the cumulative impact of Plaintiff's impairments. Plaintiff is correct. The only plausible evidence that the ALJ considered the cumulative effect of any of Plaintiff's impairments is his statement that "[t]he severity of these impairments [diabe-

tes mellitus, hypertension and ... torn rotator cuff] do not meet or equal the severity of impairment [sic] described in the Listing of impairments in Appendix 1." Record at 24–25. The ALJ did not include Plaintiff's depression (or other conditions of which she complained, such as her back problems and unsteady gait) in this list. Nor did he consider the combined effect of Plaintiff's impairments on her ability to perform past relevant work or other substantial gainful activity in the national economy. On remand, the ALJ must evaluate the cumulative impact of *all* of Plaintiff's exertional and nonexertional impairments in order to determine if, combined, these impairments prevent Plaintiff from performing other work. *See Scott v. Heckler,* 770 F.2d 482, 487 (5th Cir.1985); *Dellolio,* 705 F.2d at 128. And, in the event the ALJ doubts Plaintiff's, or one of her doctor's, credibility regarding the severity or existence of one of those impairments, he must articulate his reasons for discrediting such evidence. *See Rivera,* 771 F.Supp. at 1351.

### VI. CONCLUSION

Having found a lack of substantial evidence to support the Secretary's decision in this case, and having found application of improper legal standards, the Court ORDERS that Plaintiff's Motion for Summary Judgment is DENIED and Plaintiff's Motion for Remand is GRANTED.

The Court further ORDERS that the above-styled and numbered cause is REMANDED to the Secretary of Health and Human Services for reevaluation of the evidence, further development of the facts, and a decision in accordance with the above opinion.

SIGNED and ENTERED.